## STEVENS v. McKIBBIN.

(Circuit Court of Appeals, Fifth Circuit. May 28, 1895.)

No. 339.

PARTNERSHIP—EVIDENCE TO ESTABLISH—SUFFICIENCY.

In an action to dissolve a partnership, and for an accounting, the evidence showed that defendant was engaged in buying and selling phosphate lands, and had options on a large quantity of such land; that, to complete the purchase, he would require much money; that it was orally agreed that complainant was to advance money to defendant to invest in phosphate lands, and to have an interest in the profits, and that complainant would accept defendant's receipts for any money he might contribute; that one of such receipts recited that the money was "to be applied in payment of phosphate lands, the profits to be equitably divided with" complainant; that another recited that it was "to be applied on phosphate lands, same to be returned to him on sale of lands, and shall have, as use for same, an equitable interest accruing in all profits from sales," and that another stated that it was "to be used in dealing in phosphate lands, and returned when said lands are sold"; that there were no definite terms of partnership employed or agreed on in the contract, no estimate or valuation placed on the options and contracts held by defendant, and no agreement as to the amount of money, time, or attention to be contributed to the business by either party. *Held*, that the evidence failed to establish a partnership agreement.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

The bill in this case alleges that on or about the 7th day of October, 1890, the appellee (who was the complainant below) and the defendant George C. Stevens, entered into a contract of partnership, for the purpose of buying, selling, and negotiating sales of phosphate lands located in the state of Florida, by which contract the complainant and the said defendant Stevens were to share equally in the profits realized or to be realized from the business of said copartnership, and it alleges that from time to time the complainant contributed sums of money to the capital of said partnership, which said sums aggregate the sum of $7,890, in cash, and that he executed notes, along with defendant George C. Stevens and others, to about the amount of $20,000, and that the said cash and the proceeds of said notes were used by said partnership in the purchase of phosphate lands, which are included in the several sales and transactions specifically mentioned in the bill; that on or about the —— of February, A. D. 1891, the defendant H. H. Graham entered into some agreement with the defendant George C. Stevens, the terms of which said agreement were and are unknown to the complainant, but by which he understood the said Graham was to have some interest in the said Stevens' interest in the said partnership; that no new contract of

partnership was entered into between the complainant and said defendant Stevens at the time the defendant Graham entered into said arrangement with the defendant Stevens, nor at any time thereafter, except that the complainant and the defendants, Stevens and Graham, some time in the month of March, A. D. 1891, entered into a partnership arrangement for the purpose of doing a real-estate, stock, and brokerage business, at Ocala, Fla., the profits of said business to be equally divided among the three partners, but that said partnership for the purpose of doing the said real-estate, stock, and brokerage business was entirely distinct and separate from the business of the partnership theretofore entered into with said Stevens, mentioned in the bill. And the bill alleges that on or about March, A. D. 1892, the said latter partnership to do a real-estate, stock, and brokerage business was dissolved. The bill further alleges that at different times during the years 1891 and 1892 the defendants, Stevens and Graham, negotiated various sales of phosphate lands, amounting in the aggregate to a large sum of money; and it alleges that all the lands so sold were purchased with the moneys and assets of the copartnership alleged to have been entered into in October, 1890. It alleges that a large portion of the moneys and other considerations for the purchase of the said lands have not been paid by the purchasers thereof, and the exact amount yet due, the complainant cannot state, but that it will exceed the sum of $250,000, all of which moneys and considerations are now due, or will soon become due, and are payable to the said Stevens and Graham within a short time; that all the negotiations, contracts, and agreements for the sale of the said lands were personally conducted by the said Stevens and the said Graham, and that they have neglected and refused, although often requested so to do by the complainant, to render to him any statement or account of their receipts from said sales, and have refused to account to him for his interest therein, and have attempted to exclude from him all knowledge of these transactions, and from all participation in the profits and receipts. And the complainant charges that the said Stevens and the said Graham are appropriating, and threatening to appropriate, all the assets of the said partnership to their own use, in fraud of the complainant's rights. The bill also alleges that the last sale made by the defendants closes out all of the phosphate lands which were purchased by the capital of the said copartnership, and that all that remains now to be done is to wind up the affairs of the copartnership. The bill alleges that the defendants, Stevens and Graham, have no visible property which could be subjected to the satisfaction of any judgment or decree which the complainant might recover against them, or either of them, and charges that it is their purpose to collect the moneys which are still due from the purchasers aforesaid, and to place them beyond the reach of the complainant, and to defraud him by excluding him from any participation in the profits arising from said sale. The bill prays for a dissolution of the partnership, that an account may be taken of all the said partnership dealings and transactions between the complainant and the defendants, and that what shall appear to be due from the defendants may be decreed to be paid to him, and for the appointment of a receiver, and for an injunction, etc. The answer of the defendant Stevens denies that on or about the 7th day of October, 1890, he entered into a copartnership with the complainant, or at any other time, for the purpose of buying, selling, and negotiating sales of phosphate lands located in Florida, or for any other purpose, and denies that there ever was any contract of copartnership, or that there was any contract or agreement, between himself and the complainant, by which they were to share equally in any profits, as charged in the bill. And he denies the allegation that the complainant ever contributed any cash, notes, or other thing of value, towards the capital of any copartnership between them, and denies that the said sums of money mentioned, or any part of them, were ever used by him as partnership funds raised by the complainant and himself for the purchase of any of the said lands, and alleges that the complainant never had any interest in any of the lands as a partner of either of these defendants, except an equity as to profits that may be realized in certain lands which have been transferred to the Florida Land Rock Phosphate Company and the Chicago Florida Phosphate Company, which equity arose out of an agreement and arrangement

made by the defendant Stevens with the complainant in October, 1890, by which the complainant was to let the defendant Stevens have money to carry on phosphate land purchases and deals, and Stevens guarantied to him great profits on all money so furnished him; that the agreement was that Stevens should use whatever moneys the complainant could furnish in the purchase of and payment for phosphate lands in the state of Florida, and for the use of which said Stevens should, upon all sales of lands purchased with such funds, return the original amount, and whatever profit would be realized upon such sum, as related to the whole amount of money invested in the particular lands so sold, with the guaranty that the complainant's money so advanced to Stevens should be doubled. The answer avers that this was the only agreement and arrangement between the complainant and the defendant Stevens; that there was no partnership, express or implied, in any manner or form, between them,—no sharing of losses by the complainant with the defendant,— but that the complainant was to have an equity in the investments made by the defendant, when profits should accrue, as before stated, but was to bear none of the losses, if any were sustained; that under this agreement and arrangement the complainant advanced, at various times, several sums of money, amounting in the aggregate to $4,930, and no more, for which the defendant gave to the complainant his receipts; the money thus advanced was invested in lands, which were subsequently sold to the Chicago Florida Phosphate Company and the Florida Land Rock Phosphate Company; that these land sales have not been closed up, and that the profits to accrue therefrom are not yet known, and can now only be approximated; that the complainant is not entitled to any profits on his advances until these sales are completed; that is to say, until the said lands are fully paid for, and all expenses connected therewith are paid off. The respondents, jointly answering said bill, deny that they entered into any agreement with each other in February, 1891, or at any other time, by which any partnership between respondent Stevens and the complainant was understood or recognized as existing in the ownership or purchase or sale of any lands; and both those defendants say, as is alleged in said bill, that the brokerage business of Stevens, Graham & Co. had no relation to or interest in any phosphate real estate owned or controlled by any of the parties to this cause. Respondents, further answering said bill, admit that the allegations thereof are true, to the extent that there was a nominal copartnership for the purpose of doing a general real-estate (except as to phosphate lands), stock, and brokerage business at Ocala, Fla., and that it was separate and distinct from the phosphate land business of these defendants. The respondent H. H. Graham, answering for himself, as to the allegations of said bill of a partnership existing between his codefendant and the complainant, says that he knows nothing, of his own knowledge, except that, upon his becoming associated with said Stevens as a partner as aforesaid, he understood the relationship between said Stevens and the complainant to be as stated by his codefendant, and that in his conversations with the complainant, both before and after this respondent and Stevens became partners as aforesaid, the complainant never claimed to be a partner with said Stevens, as is charged in said bill; that the complainant was not informed, as far as the knowledge of this defendant goes, of the partnership agreement between these codefendants, and was not consulted at the time of the formation thereof, nor at any time thereafter, as to the policy and business purposes of the defendants in the disposition of the phosphate lands embraced in the partnership rights and interests, for the reason that he (the complainant) had no right to any such recognition. The defendant Stevens, further answering said bill, and especially that part charging that complainant executed notes, along with him and others, to about the amount of $20,000, and that the proceeds thereof were used in the purchase of phosphate lands, says that, when this defendant became in need of the large sums of money that the complainant had pretended he could supply, he called upon him for it, but the complainant could not respond. Complainant then suggested that, with a good note, he might borrow $10,000 from his father, who lived in New York City. A note for that amount was then made and signed by the defendant Stevens and by the complainant. This note was made for 60 days, with this defendant's collaterals, in the amount of $20,000, as security, and the

father of the said complainant loaned the money on it, receiving for the loan the munificent pay of $1,000, this defendant getting only the sum of $9,000; and this defendant, at the maturity of the said note, paid it with his own funds, not one cent of which was advanced by complainant. Nor had any money of the complainant advanced to this defendant for investment as aforesaid earned any profits from which this defendant could draw to help pay the said $10,000 note. And the defendant, further answering said charge, says that there was another $10,000 note and a $1,000 note, which the complainant signed, with this defendant and others, but that they were never used, and not a dollar was ever raised upon them, or either of them. The receipts referred to were in evidence, and are in these words:

"Ocala, Fla., October 7, 1890.

"R. S. Clark, Sec'y.

"Received from J. C. McKibbin two thousand ($2,000) dollars, to be applied in payment of phosphate lands, the profits to be equitably divided with him on same; also, Oct. 16th, received of same party, on same conditions, for same purpose, ($300) three hundred dollars.          G. C. Stevens."

"The Ocala House. R. S. Clark, Proprietor.

"Ocala, Fla., November 17, 1890.

"Received from J. C. McKibbin the following sums of money, viz.:

| | |
|---|---:|
| October 25th | $ 500 00 |
| Nov. 12th | 300 00 |
| Nov. 10th | 1,000 00 |
| " 17th | 725 00 |

$2,525 00—100

—To be applied on phosphate lands, same to be returned to him on sale of lands, and shall have as use for same an equitable interest accruing in all profits from sales.          G. C. Stevens."

"The Ocala House. R. S. Clark, Proprietor.

"Ocala, Fla., December 26th, 1890.

"Received of J. C. McKibbin, Nov. 25 & 29, 50.00 & 15.00,—total, $65.00,—to be used in dealings in phosphate lands, and returned when said lands are sold.          G. C. Stevens."

The complainant took the testimony of several witnesses, for the purpose of proving admissions of Stevens relative to the alleged copartnership between them. On the final hearing on pleadings and proof, the circuit court rendered a decree for the complainant; deciding the alleged copartnership to exist, ordering an account, and decreeing that the complainant should recover a large sum of money from the defendant Stevens. From this decree, said defendant appealed.

John G. Reardon, George L. Paddock, and Banning & Banning, for appellant.

Bisbee & Rinehardt, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and TOULMIN, District Judge.

TOULMIN, District Judge, after stating the case as above, delivered the opinion of the court.

There are several assignments of error, the first of which is that the circuit court erred in deciding that there was a partnership between the complainant and the defendant. If this assignment is sustained, there can be no need for us to consider the others. The controlling issue in the case is whether the relationship between the

complainant and Stevens was that of copartners. The parties, in their pleadings and in their testimony, agree that the contract between them, by which the complainant claims a partnership was formed, and under which he advanced his money, was made in October, 1890. They also agree that the brief partnership, for the purpose of doing a real-estate, stock, and brokerage business, formed in 1891 between Stevens, Graham, and the complainant, had nothing to do with the contract of 1890 referred to. It appears from the testimony that, at the time the agreement between the complainant and Stevens was made, the latter was, and for some time had been, engaged in buying and selling phosphate lands in the state of Florida, and had secured options on, and a control of, a large quantity of such lands, and that to complete the purchase of these lands it would require a large amount of money; that it was agreed between the parties that the complainant was to advance money to Stevens, to invest in phosphate lands, and was to have an interest in the profits realized therefrom, and it was also agreed that the complainant would accept Stevens' receipts for any money he might contribute to the adventure. There were no definite terms of partnership employed or agreed on in the contract. There was no estimate or valuation placed on the options and contracts already secured by Stevens, and there was no agreement as to the amount of money, time, or attention that was to be contributed to the business by either of the parties. The complainant was not bound to contribute any certain sum, but for such sums as he did contribute he was to accept Stevens' receipts, and Stevens was to use the money in dealings in phosphate lands. There was no agreement as to the proportion of the profits he was to receive; and none as to his sharing the losses. Indeed, the complainant himself does not undertake to state, in his testimony, what was definitely said by him and by Stevens about a copartnership. His testimony on the subject is indefinite and uncertain. He says that his intention was to form a copartnership, and his understanding was that they were entering into a copartnership, and states, as a reason for such understanding, the fact of his contributing funds to carry it on. He says that he agreed to accept Stevens' receipts for any money he might contribute, and that he was to share in the profits, but that there was no definite agreement as to the proportion of the profits he was to receive. The contract between the parties was entirely verbal, except so far as the same is expressed in the receipts given by Stevens to the complainant for the moneys contributed by him. Stevens testifies that the receipts were intended to express the contract between the complainant and himself, and he says that he guarantied to the complainant that his interest in the profits would not be less than double the amount of money he might contribute to the adventure, and that it was upon these terms the complainant advanced his money for investment, and that there was no partnership agreed on or intended. Other evidence in the case corroborates Stevens' statement as to this, and that he guarantied the complainant against any loss in his investments. One Gardner testifies that he was present when the agreement was made between the

complainant and Stevens, and that the agreement was that the former was to furnish some money, which the latter was to invest in lands, and which he agreed to double, and that neither party said anything about a partnership.

We think the character of the contract may be determined by the receipts exhibited in the testimony. They furnish the only written evidence which the parties themselves have made of their agreement. Two of the writings are more than receipts. They are contracts requiring Stevens to return the money advanced by the complainant to him when the lands in which the money was invested were sold. One of the receipts expressly provides that the complainant shall have, as use for the money, an equitable interest in all profits from the sale of the lands. We think these receipts disclose a purpose and agreement to repay the money at all events. It was to be paid when the lands to the purchase of which it was to be applied should be sold, and whether they were sold at a profit or a loss. The stipulation is not that the money advanced would be repaid out of the proceeds of the land when sold, but would be repaid when the lands were sold; the sale of the land fixing the time of the payment of the money. The testimony of the witnesses by whom it is sought to prove Stevens' admission of a partnership with the complainant is indefinite and uncertain, both as to what was said by Stevens in regard to his business relations with the complainant, and as to the time when the statements were made. They doubtless referred to the partnership in the real-estate and brokerage business of 1891–92, which had no connection with the partnership sought to be established in this suit, or to the particular land deals in which the complainant's money was used. "A partnership is a voluntary contract between two or more persons to place their money, effects, labor, and skill, or some, or all of them, in lawful business, and to divide the profit and bear the loss in certain proportions." 3 Kent, Comm. 20. If it be one of the terms of the contract that each shall share in the risks and losses, and also in the profits to be realized, this constitutes them partners inter sese. These risks or interests are not required to be equal, nor is it important that they shall agree in kind. The investment may be unequal, and the parties may agree to divide the profits unequally, but there must be a mutuality of risks,—an interest both in the profits and losses. Smith v. Garth, 32 Ala. 368. In the case of Cassidy v. Hall, 97 N. Y. 165, it is said: "It is well settled that when a party is only interested in the profits of a business, as a means of compensation for money advanced, he is not a partner." The receiving of part of the profits of a commercial partnership in lieu of or in addition to interest, by way of compensation for a loan of money, does not make the lender a partner with the borrower. Meehan v. Valentine, 145 U. S. 611, 12 Sup. Ct. 972. Thus a party may by agreement receive, by way of interest, a portion of the profits of an adventure, on money loaned to be used in the adventure, without becoming a partner. Judge Story says that the true rule is that "the agreement and intention of the parties themselves should govern in all cases." Story, Partn. §§ 1, 38, 49.

This certainly must be the rule, as between the parties themselves. In this case there are two of the essential requisites of a partnership wanting,—a joint fund and a common risk; and our opinion is that the testimony wholly fails to establish an agreement and intention of the parties to create the partnership alleged in the bill. The decree of the circuit court is reversed, and the cause remanded, with directions to dismiss the bill, but without prejudice to the complainant's rights to proceed against the defendant at law or in equity, as he may be advised his interests require.