## SULLIVAN v. McCONNELL.

(Circuit Court of Appeals, Fifth Circuit. February 4, 1896.)

### No. 395.

ESTOPPEL IN PAIS.

 In a suit brought by the S. Company against S. individually, one of the causes of action was that S. had used the time and labor of the clerks employed and paid by the corporation in the transaction of his private business. In support of the allegations of the complaint, one M. made an affidavit that he knew the allegations on this subject were true, because he was one of the employés of the company, and was required by S. to act as his individual bookkeeper and general clerk, "although said company paid affiant's entire salary." After the filing of the bill a compromise was made settling all the matters in controversy, each party releasing all claims against the other. M. took part in these negotiations as a representative of the company, insisting on the truth of the allegations as to the use of the clerks, etc., without intimating to S. that he claimed compensation from him individually for the services rendered. *Held*, that M. was estopped from thereafter maintaining a suit against S. for such compensation.

In Error to the Circuit Court of the United States for the Northern District of Florida.

This was an action of assumpsit by R. F. McConnell against Martin H. Sullivan to recover money claimed as compensation for services rendered. In the circuit court verdict and judgment were given for plaintiff, and defendant brought error.

J. J. Sullivan, Geo. P. Raney, John A. Henderson, and John Eagen, for plaintiff in error.

W. A. Blount, A. C. Blount, Jr., and J. C. Avery, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge

BOARMAN, District Judge. This is an action in assumpsit begun September 24, 1894, by McConnell against Sullivan. The claim asserted by the plaintiff, McConnell, as stated in his declaration, is that, on September 1, 1894, Sullivan was indebted to McConnell in the sum of $3,700, for work and labor as bookkeeper, accountant, correspondent, and secretary from February 1, 1890, to March 1, 1893, at $100 per month, $3,700. The judgment of the lower court was for plaintiff for $3,700 with interest. There were three pleas presented by defendant to plaintiff's declaration: (1) The general issue; (2) the statute of limitations; (3) the plea of estoppel, which is as follows:

"That said plaintiff is estopped, and ought not to be permitted, to maintain his said action against this defendant, for the reason that said plaintiff was the secretary and bookkeeper of the Sullivan Timber Company, a corporation organized under the laws of Florida, at the time and for a long period prior to the date of filing of a bill in equity, in this honorable court, by said Sullivan Timber Company, against M. H. Sullivan, defendant herein, on the 22d day of May, 1893, claiming divers sums of money upon various grounds; and among items alleged and claimed, in said bill of Sullivan Timber Company, of M. H. Sullivan, the defendant, is the sum of $9,151, for salary of clerks and employés, etc., as set out in paragraph 15 of said bill, and alleging that said employés and clerks were occupied in the private business of said M. H. Sullivan, in writing letters, telegrams, etc., while they were paid by the Sullivan Timber Company; and defendant alleges that plaintiff was one of the employés of the Sullivan Timber Company claimed to have been occupied in the business of defendant, and during the same period of time claimed by plaintiff in this suit, and that the plaintiff in this suit furnished the data for said charge in said bill in equity, and made affidavit that same was correct. That afterwards, to wit, on the 7th day of June, 1894, by agreement in writing, all suits pending and matters in controversy between said Sullivan Timber Company and M. H. Sullivan, including suit in equity in this court, in which said item for clerk hire, etc., was claimed, were settled and adjusted, and by the express terms of said agreement each party mutually released the other from all claims of any kind then existing or that should thereafter arise from the organization or operation of said Sullivan Timber Company. And defendant alleges that R. F. McConnell, as secretary of said Sullivan Timber Company, participated in the negotiations leading to said settlement, and signed said agreement in writing aforesaid, as secretary of said Sullivan Timber Company; and defendant alleges that plaintiff's claim in this suit is one growing out of the business relations between said Sullivan Timber Company and defendant, and that same was covered by paragraph 15 of said bill in equity in this court, and settled and adjusted as aforesaid, and that said plaintiff, by reason of the premises, is estopped from asserting a claim in his own right in this suit against this defendant, and this the defendant is ready to verify.

"Wherefore he prays judgment if the plaintiff ought to be admitted against his aforesaid dealings and actions to maintain this his suit against this defendant."

Six assignments of error are presented by plaintiff in error, defendant below. The first, second, third, and sixth relate to matters

which, under the view we take of the case, we do not think it necessary to discuss. The fourth and fifth relate to the defense of estoppel, set up in the third plea. °

"(4) The court erred in refusing to give, at the request of the defendant, the following instructions to the jury: 'If the jury believe, from the evidence, that the plaintiff was cognizant of the settlement shown by the evidence to have been made between the Sullivan Timber Company and the defendant, M. H. Sullivan, and that the plaintiff in this suit stood by and permitted such settlement to be made, and did not make or assert any claim against the defendant for compensation for services sued for in this action, you will find for the defendant.'

"(5) The court erred in refusing to give, at the request of defendant, the following instruction to the jury: 'If you believe, from the evidence, that the plaintiff made an affidavit, pending litigation between Sullivan Timber Company and M. H. Sullivan, that said Sullivan Timber Company paid his entire salary, although he did the work claimed in this suit while in the employ of said timber company, you will find for the defendant.' "

These two assignments direct the attention of the court to the only issue presented by the pleadings and record which we will consider. The fifteenth paragraph, referred to in the plea of estoppel as appearing in the bill in equity of Sullivan Timber Company against M. H. Sullivan, is shown in the transcript (Exhibit A) to be as follows:

"(15) The complainant further shows unto your honors that, in the conducting of his private business, it became necessary to said Martin H. Sullivan to have, in and about his office, clerks and employés, and to send and receive telegrams, and to write and receive letters in and about his private business and family affairs, but from November, 1886, to November, 1892, the said Martin H. Sullivan, fraudulently colluding and conspiring with the said W. A. S. Wheeler to defraud complainant, did require and cause to be employed, in the name of, and to be paid by, complainant, clerks and employés to do his (said Sullivan's) private business, and did charge the salary of said clerks to, and caused the same to be paid by, complainant; and the said M. H. Sullivan, further colluding and conspiring with the said W. A. S. Wheeler to defraud complainant, did cause the expenses of the said Sullivan's telegrams and cablegrams and stationery and stamps, and all other office expenses of his, to be paid out of the funds of complainant; and the said salary of the said clerks and employés, and the said office expenses so paid out of the funds of complainant by the said W. A. S. Wheeler, together with interest to February 28, 1893, aggregates the sum of ninety-one hundred and fifty-one dollars ($9,-151.00)."

As is shown on the defendant's second exception, relating to the refusal of the judge to charge as requested,—assignments 4 and 5,—evidence was introduced showing that McConnell made an affidavit supporting the allegations of the bill of complaint filed by the Sullivan Timber Company against M. H. Sullivan, and that, in said affidavit, he said that he had read the said bill, and that the allegations contained in paragraph 15 of said bill were true; that he knew them to be true, because he (the deponent) "was one of the employés of the Sullivan Timber Company, and was required by said M. H. Sullivan to act as his (said Sullivan's) bookkeeper and general clerk, although said company paid affiant's entire salary; and that said Sullivan contributed nothing to the payment thereof." Further evidence was offered showing that, after the said bill had been filed, with the said affidavit of McConnell attached thereto, a compromise was made, adjusting and settling all of the controver-

sies between the parties to the said bill in equity, including matters involved in said paragraph 15; that, during the negotiations and settlements made in pursuance of said compromise, said McConnell was actively acting as one of the representatives of the said Sullivan Timber Company; and that D. S. Troy and J. J. Sullivan were, on the other hand, representatives of the said M. H Sullivan in discussing, making, and agreeing to the said compromise. The evidence relating to the same exception shows, further, that said McConnell stated and represented to the said D. S. Troy and J. J. Sullivan that he knew the statements in paragraph 15, above set out, were true, because he (McConnell) had rendered most of the services therein described. And there was also testimony, given by said McConnell, in which he claimed to have said to the representatives of the Sullivan Timber Company that any settlement that might be made was not to cover or include the services rendered by him to M. H. Sullivan, individually, and he testified, further, that he had never notified or intimated to "said M. H. Sullivan, or his agents or representatives," that such settlement was not to cover the same, because he never had any conversation with them on the subject. McConnell also denied that he ever made such statements to D. C. Troy or J. J. Sullivan above mentioned. He also testified that there were clerks, employés of the Sullivan Timber Company, who performed services for M. H. Sullivan set forth in paragraph 15, and that "he did not consider himself a clerk or employé," and that said paragraph was not intended to cover his services.

If will be seen that the averments in paragraph 15 allege, substantially, that M. H. Sullivan, individually, had for a period of years been using and appropriating to himself the services of the clerks and employés of the timber company, all of which services belonged to and were the property of the Sullivan Timber Company, and, because M. H. Sullivan had so used and appropriated their services to his individual use, he owed and should pay said Sullivan Timber Company $9,151 for the said use of the company's said servants, clerks, and employés. At the time of the filing of the suit, and at the time said compromise was made of all the controversies therein, McConnell had never made any demand on M. H. Sullivan for payment for whatever services he might have rendered to Sullivan, and such a demand was never made until a short while before McConnell's suit was filed. It will be seen, from the testimony recited in aid of the third exception, that McConnell states that, at the time he made the said affidavit, he declared that he did not intend, for the matters set out in paragraph 15, to cover the claim which he personally had against M. H. Sullivan, individually, for the services which he had rendered him. He also said that he did not consider himself an employé or clerk of the timber company, and denies that he ever notified or intimated to M. H. Sullivan, or his agents or representatives, that the said paragraph was not to cover his claim against him (Sullivan) individually.

Counsel for defendant in error, in support of the refusal of the judge to charge matters assigned in paragraphs 4 and 5, contends

that the testimony relating to matters shown in said paragraph 15, and to the affidavit of McConnell made in verification of said paragraph, and to the conversation had with Troy and Sullivan, show material issues of fact, which would have been taken from the jury by the court if the judge had charged as requested in paragraphs 4 and 5. Recitals in the bill of exception No. 3 show paragraph 15 and the affidavit attached thereto, and also show testimony, on the part of McConnell, which, under one view of the case, would support the contention of defendant in error's counsel, that, as there is an issue of fact involved, the jury should have had that issue of fact given to them. But, under the view we take of the appellant's plea of estoppel, even though such conflicting statements are shown in the recitals in the said bill of exception, we think that the circuit court erroneously refused to give the instructions embodied in the fourth and fifth assignments. We are led to this view because we think the legal import of paragraph 15 and McConnell's affidavit supporting its allegation was to give notice to M. H. Sullivan that the services rendered to him, individually, by McConnell, were covered expressly or by legal implication in the charges against Sullivan and in the allegations disclosed in the said fifteenth paragraph.

Plaintiff in error's plea of estoppel is founded on the notice, whatever its extent may be, in law, that said paragraph and affidavit imported to Sullivan. Considering the extent of the legal effect of such notice, it seems that McConnell should be estopped from claiming anything from Sullivan for the services which he says he rendered to Sullivan. The purpose of the plea of plaintiff in error's view is to forbid McConnell from charging for any services rendered to Sullivan which are legally covered by or in the charges and allegations of paragraph 15. The said paragraph clearly conveys the idea that the timber company, having become aware of the fact that Sullivan had been appropriating to his own use the property of said company, to wit, the labor of its servants, clerks, or employés, it (the said company) intended to hold, and did therein hold, and charge him with liability to the extent of $9,151 for his (Sullivan's) appropriation and use of the labor of such said servants, etc. Considering the averments in said paragraph, in connection with the legal import of McConnell's said affidavit, together with the knowledge which Sullivan himself had of the fact that McConnell, while serving him as his secretary, etc., was all the time an employé of said company, and one to whom the said company was paying his entire salary, we think the notice conveyed in said paragraph, enlarged and illustrated, as such notice was, by the facts within knowledge of both McConnell and Sullivan, was broad enough, in its legal effect, to give Sullivan to understand and believe that the company, in making its claim for $9,151, intended to include, and did include, therein, all of its right, whatever it might in law be, to charge him (Sullivan) for or because he may have, at times, used the labor of the company's servant, McConnell, or of any other of its servants. The correctness of the charge set out in paragraph 15, so far as it shows that certain employés of the timber company worked for Sullivan as his clerks, etc.,

seems to have been known only to McConnell and Sullivan. The legal import of the claim in said paragraph shows that the timber company was suing Sullivan for $9,151, because he had appropriated and used certain labor of its servants, McConnell and others. Sullivan knew that he had, at times, used his (McConnell's) services, and he knew, too, whether he had, at any time, used or appropriated to himself the labor of any other servant of the company. He was advised by the affidavit that he (McConnell) said that the charge in paragraph 15 included his (McConnell's) services, as one of the servants for whose services he was there being charged by the timber company.

The conflicting evidence, whatever issues of fact it may present, does not show that McConnell, at any time anterior to the institution of said suit, or to the said compromise settlement thereof, ever said anything to any one, except, it may be, to the representatives of the timber company, that said paragraph 15 did not cover his claims, nor that said compromise would not cover the same. In such evidence it appears that McConnell denies that he told Sullivan's lawyers anything about the statements in said paragraph being true, etc., but no one claims that McConnell ever talked with Sullivan or his agents or his representatives about the claim prior to the institution of the said suit or the compromise settlement thereof. In the absence of such knowledge as would have been imparted to Sullivan had McConnell ever set up any claim against him, it is clear that Sullivan, in making the said compromise, was entitled to consider, and be governed therein by, the legal effect and import of said paragraph 15, illustrated, as it was, by McConnell's affidavit. Whatever may have been the said conversation between the Sullivan Timber Company and McConnell, it is clear that McConnell was, as to Sullivan himself, silent, when it was his duty to speak. If paragraph 15 and the said affidavit, according to McConnell's own understanding, did not include or cover his claim against Sullivan, it was clearly his duty, under the circumstances, to speak out what was in his mind to Sullivan. Failing to do this, he was guilty of a concealment, which, in law, amounts, under the circumstances,—among which circumstances may be noted the said affidavit, McConnell's failure at any time prior to the said compromise to demand or in any way claim pay for the services for which he now sues, and his presence as the active representative of the timber company pending the settlement of the claim in paragraph 15,—to intentional negligence of a breach of duty. See 2 Herm. Estop., cited under Pickard v. Sears, 6 Adol. & E. 469; Timon v. Whitehead, 58 Tex. 290, cases cited.

Under the views we have stated herein, Sullivan was justified, in acting on the legal effect of paragraph 15 and of said affidavit, in believing that the compromise covered and settled whatever claims the timber company or any one else might have had, under the legal import of the allegations in paragraph 15, considered in connection with said affidavit. But it is not necessary, in aid of our purpose to sustain plaintiff in error's defense on the plea of estoppel, to rest

our reasons therefor on the fact that McConnell's conversations with the representatives of the Sullivan Timber Company or with any one else did not charge Sullivan with notice of the claim that McConnell had, for two or three years, in'mental reservation, against Sullivan; for we think that said paragraph, together with McConnell's affidavit in verification and explanation thereof, and all the circumstances attending the making of said compromise, should have the effect, in law, of estopping him from prosecuting successfully a claim of which he, subsequently to the making of said compromise settlement, for the first time, gave Sullivan notice.

There was error in the circuit court in refusing to give the special instructions recited in paragraphs 4 and 5. The judgment is reversed, and the cause remanded, with instructions to set aside the verdict and grant a new trial.