GENTRY v. SINGLETON.

(Circuit Court of Appeals, Eighth Circuit. March 7, 1904.)

No. 1,853.

1. EVIDENCE—MATERIALITY.

Where all the facts of a transaction are clearly stated by a witness, his inference or understanding therefrom is wholly immaterial and inadmissible.

2. TRIAL—DIRECTION OF VERDICT.

When the evidence so conclusively entitles one party to a verdict that a verdict for his opponent would have to be set aside, the court may properly direct a verdict in his favor.

3. SAME—TITLE ACQUIRED—POSSESSION OF SELLER AS EVIDENCE OF OWNERSHIP.

Mere possession of personal property by the seller, if there be no other evidence of ownership or power of disposal, will not preclude a third person, who is the true owner, from reclaiming his property or its value from the purchaser.

4. PARTNERSHIP—WHAT CONSTITUTES—EMPLOYÉ RECEIVING SHARE OF PROFITS.

A mere employé engaged to render service in conducting a business, although he is to receive a share of the profits as compensation for his services, is in no sense a partner, and has no power to sell property of his employers, where he has never been held out by them as having such authority.

5. PARTIES—OBJECTION TO NONJOINDER—WAIVER.

Under Mansf. Dig. Ark. §§ 5028, 5031, extended to Indian Territory, providing that a nonjoinder or defect of parties, where the objection is not raised by demurrer to the complaint or by answer, is waived, the right of a plaintiff to recover the value of property converted by defendant cannot be contested on the trial on the ground that the property was owned by plaintiff and a third person in partnership, and especially where such third person testified in plaintiff's behalf, and is thereby estopped to assert any interest in the property as against defendant.

In Error to the United States Court of Appeals in the Indian Territory.

For opinion below, see 69 S. W. 898.

N. A. Gibson, Benj. Martin, Jr., and N. B. Maxey, for plaintiff in error.

Preston C. West, for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

VAN DEVANTER, Circuit Judge. This was an action in the United States Court for the Indian Territory by Singleton against Gentry to recover the value of 56 steers alleged to have been the property of the plaintiff, and to have been converted by the defendant to his own use. A trial by jury resulted in a judgment for plaintiff, which was affirmed by the Court of Appeals for the Indian Territory. Gentry v. Singleton, 69 S. W. 898. It is complained, first, that at an early stage of the trial the court held that, if the defendant desired to contend that the number of steers included in the transactions under ex-

¶ 4. See Partnership, vol. 38, Cent. Dig. § 43.

amination was less than 56, he must carry the burden of proving that fact. Even if the ruling was erroneous when made, no harm or prejudice resulted from it, because thereafter it was affirmatively shown by uncontradicted evidence produced by plaintiff, and also by evidence produced by defendant, that 56 was the correct number. It is complained next that defendant was, by several rulings at the trial, unduly restricted in the cross-examination of John A. Skaggs, a witness for plaintiff. If there was error in this, it was equally without harm or prejudice, because defendant subsequently amended his answer, and then, without any restriction, proceeded with the cross-examination of the witness, and fully interrogated him upon every matter covered by these rulings. Another complaint is that Charles Bruner, a witness for defendant, was not permitted to answer the question, propounded by defendant: "Who did you understand you were selling the cattle to?" Bruner, who was then the owner of the steers, sold them shortly before the alleged conversion, and the purpose of his examination was to show to whom the sale was made—whether to plaintiff, or to plaintiff and others, including one Henry, to be mentioned later. Bruner's recollection of the transaction seemed entirely clear, and he was permitted to testify to all that was said and done at the time of the sale. The inference or understanding to be properly drawn from what occurred at that time was to be determined by the court and jury, and the unexpressed thought or understanding of the witness was wholly immaterial.

The principal reliance for a reversal is upon the action of the court, at the conclusion of the evidence, in instructing the jury to return a verdict for the plaintiff, leaving for the jury's determination only the amount of damages. In this the court followed the established rule that, when the evidence so conclusively entitles one party to a verdict that a verdict for his opponent would have to be set aside, the court may direct a verdict for the party entitled to it. Elliott v. Chicago, etc., Ry. Co., 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068; Coughran v. Bigelow, 164 U. S. 301, 307, 17 Sup. Ct. 117, 41 L. Ed. 442; Grimes Dry Goods Co. v. Malcolm, 164 U. S. 483, 492, 17 Sup. Ct. 158, 41 L. Ed. 524; Motey v. Pickle, etc., Co., 20 C. C. A. 366, 74 Fed. 155; Ponder v. Jerome Hill Cotton Co., 40 C. C. A. 416, 100 Fed. 373; Cudahy Packing Co. v. Marcan, 45 C. C. A. 515, 106 Fed. 645, 54 L. R. A. 258. This case comes well within this rule. The uncontradicted evidence showed this state of facts: Singleton and the witness Skaggs entered into an arrangement whereby the latter was to buy cattle in the Indian Territory with money supplied by the former, and the cattle were to be taken to Kansas by Skaggs, and there sold, and the profits divided equally between them. Skaggs then entered into an arrangement with one Henry, whereby the latter, or a man furnished by him for the purpose, was to assist Skaggs in caring for the cattle and in taking them to Kansas, and was to receive as compensation for this service one-half of the profits to which Skaggs would be entitled. Henry was to have no interest in the cattle, and was not to have authority to buy or sell. Singleton assented to this arrangement. Skaggs and Henry subsequently went to the home of the witness Bruner, and the 56 steers before named were then purchased from

him. The negotiations leading to the purchase were entirely between Skaggs and Bruner, and the steers were paid for by Skaggs' individual bank checks, drawn against money supplied by Singleton. Henry was introduced to Bruner by Skaggs as "the man that is helping me with the cattle." The steers were to remain for a short time in the pasture of Bruner, without his being responsible for them; Skaggs stating "that he or Mr. Henry would be around there to look after the cattle." A few days later, Skaggs branded the steers with a brand in which Henry is not claimed to have had any interest. Without the permission or knowledge of Singleton or Skaggs, Henry took the steers from Bruner's pasture and sold them, with other cattle of his own, to defendant, who bought, shipped, and sold the steers without knowing their true ownership, or Henry's relation to them. There was some evidence to the effect that prior to this transaction Henry and Skaggs had been together much, and that it was "understood" in the community that Henry was "associated or connected" with Skaggs in the "cattle business"; but there was no evidence that either Singleton or Skaggs had held Henry out as a partner, or as authorized to buy or sell cattle on behalf of either or both of them, or as having an interest in the steers. Nor was there any evidence that Henry had made any other sale of cattle belonging to Singleton and Skaggs, or either of them. Neither Singleton nor Skaggs received any part of the purchase price paid to Henry, or otherwise ratified the sale to defendant. After learning what had been done with the steers, and without unreasonable delay, Skaggs informed defendant of their true ownership, and of the unauthorized character of the sale. Referring to this, the defendant testified:

"Q. You stated, I understood, Mr. Gentry, that, whilst your communications were going on about a settlement with Mr. Skaggs and Mr. Singleton, that you received a telegram from Mr. Henry to hold onto those cattle—that he would guaranty the title? A. I received a telegram at Checotah signed 'J. N. Henry.' I don't know anything about it. Q. You were then informed that Henry was the man that sold you the cattle, and that he had no right to sell them to you, and you made no inquiry about Henry? You had been informed that Henry had no right to sell those cattle when Skaggs came there? You knew where Henry was, because you got a telegram telling you to hold onto them? A. Yes, sir. Q. That he would defend them in any court? A. Yes, sir. Q. You relied on that, and did not make any further effort to collect from Henry? A. Yes, sir."

Henry soon left the country and his whereabouts were thereafter unknown. As bearing upon the ownership of these steers, as between plaintiff and Skaggs, plaintiff testified:

"Q. Were you the owner of the cattle sued for in this action? A. Yes, sir."

Skaggs was a witness, and did not assert any right or claim against defendant, but testified on behalf of plaintiff:

"Q. For whom were you buying cattle? A. For Mr. Singleton. Q. The plaintiff in this action? A. Yes, sir."

The principles of law which determine the rights of litigants upon such a state of facts are few and well recognized. The general rule, predicable of a simple transfer from one party to another, where no other element intervenes, is that no one can transfer a better title to personal property than he himself possesses. To do more, he must be

clothed with power of disposal by the true owner, or must be held out by him as possessing such power, and an innocent third party must rely upon this apparent authority, or the transfer must be ratified or confirmed by the true owner after it is brought to his notice.   Ownership usually carries with it the right to possession, and the relation between the two is such that possession may properly be said to be prima facie evidence of ownership, but it is not more.   Ownership is the principal thing, and ordinarily controls the possession, which is secondary or incidental.   Whoever buys from one in possession must see to it that he has some title or authority other than that which is conferred by mere possession, because the possessor may be a thief or a servant without power of disposal, neither of whom can give a good title, no matter how innocent the purchaser may be, or how much he may pay for the property.   It follows that mere possession of the vendor, however acquired, if there be no other evidence of ownership or power of disposal, will not preclude a third person, who is the true owner, from reclaiming his property or its value from the vendee. Mechem on Sales, §§ 154–159; Stanley v. Gaylord, 1 Cush. 536, 48 Am. Dec. 643; Baker v. Taylor, 54 Minn. 71, 55 N. W. 823; Jetton v. Tobey, 62 Ark. 84, 34 S. W. 531.   In one view of the evidence, the possession of Henry was that of a thief, and in no possible view was it of a higher order than that of a servant without authority to sell. In neither view could he transfer the title to defendant.

It is urged that the arrangement between Skaggs and Henry, made with Singleton's assent, constituted Henry a partner in the business in which Singleton and Skaggs were engaged, and empowered him, as to third parties, to make sales of the partnership property.   While the general rule is that participation in profits is presumptive evidence of partnership, an employé or servant who has no power as a partner in the firm, and no interest in the profits, as property, and who is simply engaged as an employé or servant, and is to receive a stated sum out of the profits, or a proportion of the same, as compensation for his services, is not a partner in any sense.   This is also true of one who receives part of the profits of a commercial partnership only by way of compensation for a loan of money.   Berthold v. Goldsmith, 24 How. 536, 542, 543, 16 L. Ed. 762; Meehan v. Valentine, 145 U. S. 611, 619, 624, 12 Sup. Ct. 972, 36 L. Ed. 835; The J. P. Donaldson, 167 U. S. 599, 605, 17 Sup. Ct. 951, 42 L. Ed. 292; Stevens v. McKibbin, 15 C. C. A. 498, 68 Fed. 406; Randle v. Barnard, 26 C. C. A. 568, 81 Fed. 682; 1 Bates on Partnership, §§ 36, 37.   The evidence clearly shows that Henry furnished his own labor, or that of another person provided by him, as an employé or servant; that he had no power or voice in the management of the business; and that he had no interest in the profits, other than that the compensation for his labor, or that furnished in its stead, was measured by a certain proportion of the profits.   He was not a partner.

The evidence conclusively entitled the plaintiff to a verdict, and made it the duty of the court to direct the jury accordingly, unless there was some obstacle in a matter yet to be noticed.

It is insisted on behalf of defendant that the arrangement between Singleton and Skaggs possessed such elements as made it a partner-

ship, and thereby invested the title to the steers, and the right to re-cover for their conversion, in the two partners jointly, instead of Singleton alone. Pomeroy's Code Remedies, § 223. But in our view of defendant's situation and Skaggs' relation to this action when the court came to instruct the jury, it is unnecessary to determine whether the agreement between Singleton and Skaggs made them partners, or, if it did, whether Singleton alone could ordinarily recover more than his portion of the damages. See 1 Chitty on Pleadings (16th Am. Ed.) p. *75; 1 Sutherland on Damages, §§ 134, 137. Under the Statutes of Arkansas, which have been extended to the Indian Territory (Mansf. Dig. §§ 5028, 5031; Ind. T. Ann. St. 1899, §§ 3233, 3236), a non-joinder or defect in parties plaintiff, not raised by demurrer to the complaint or by answer, is waived. Yonley v. Thompson, 30 Ark. 399, 401; Clark v. Gramling, 54 Ark. 525, 528, 16 S. W. 475; Seip v. Tilghman, 23 Kan. 289; Bliss on Code Pleading, § 411. No sugges-tion of a defect in parties was made by demurrer or answer, and thereafter defendant was not in a situation to complain that Skaggs had not been joined as a party plaintiff. For another reason Skaggs was precluded from asserting a right of recovery against defendant. He had fully acquiesced in the prosecution of this action, wherein Singleton asserted exclusive ownership of the steers, and sought to re-cover the entire damages; and he had given material support to Sin-gleton's claim by giving testimony, as before shown, which was incon-sistent with any right of recovery in himself. Skaggs was therefore estopped, as against defendant, from claiming any interest in the prop-erty converted. Sullivan v. McConnell, 19 C. C. A. 400, 73 Fed. 130; Barney v. Dewey, 13 Johns. 224, 7 Am. Dec. 372; Hobbs v. McLean, 117 U. S. 567, 580, 6 Sup. Ct. 870, 29 L. Ed. 940; Birdsell v. Shaliol, 112 U. S. 485, 487, 5 Sup. Ct. 244, 28 L. Ed. 768; James v. Germania Iron Co., 107 Fed. 597, 46 C. C. A. 476, 492. And defendant was in no danger of being compelled to respond twice for the same act of conversion.

There was no error in directing a verdict for plaintiff. The judg-ment is affirmed.