Robert E. Sommers v. Commissioner.
Sommers v. Commissioner
Docket No. 18626.
United States Tax Court
1950 Tax Ct. Memo LEXIS 227; 9 T.C.M. (CCH) 328; T.C.M. (RIA) 50102; April 7, 1950
Simon J. Hauser, Esq., 420 Lexington Ave., New York, N. Y., for the petitioner. John J. Madden, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves a deficiency in income tax in the amount of $5,817.58 for the year 1944. The issue is whether respondent erred in taxing to petitioner all of his distributive share of the earnings of the partnership of which he was a member, without any adjustment for the amount thereof to which, it is alleged, his wife was entitled. Alternative questions are whether the amount paid to the wife is deductible as an expense under Section 23 (a) (1) or (2) of the Internal Revenue Code, and whether the allowance of a deduction *228 for interest on a loan which the respondent determined the wife had made to petitioner for investment in the partnership was proper. Petitioner's return was filed with the collector for the third district of New York. Findings of Fact Petitioner, a resident of New York, with many years of experience in the manufacture of handbags, in 1932 went through bankruptcy and was not gainfully employed. In August of that year, conditional upon the employment of petitioner by the corporation, petitioner's wife, at his request, purchased with her own funds, at a cost of $2,333.33, 33 1/3 shares, or one-third of the capital stock of Deauville Bags, Inc., a New York corporation engaged since 1931 in the manufacture of handbags, and which at that time was in financial difficulties. Twenty-five shares of the stock were purchased from Jacob Fein, who agreed to donate the price thereof, amount $1,750, to the corporation. During the same month the stockholders agreed that petitioner would be elected president and a director at a specified salary, the employment to terminate at the close of 1933. Petitioner and his wife had an understanding at that time that any earnings received on the investment *229 would be shared by them equally. A short time thereafter the record stockholders contributed pro rata $3,000 to the capital of the corporation. The stock certificates issued in the name of petitioner's wife were subject to agreements, generally for one year periods, and providing for expiration on December 31, executed by the stockholders and petitioner, or by them and Deauville Bags, Inc., in 1934, 1937, 1939, 1940, and 1941, which, with an agreement not entered on the certificates, provided, among other things, that the individuals would vote their stock so that petitioner would be a director and president and that Fein and one Williams would have certain specified offices. The agreement of December 31, 1934, was effective for one year, except that it gave petitioner an option to renew it from year to year by giving written notice not later than December 1, of each year, and provided that in the event of death of a stockholder, or in the event he or she desired to sell her stock, the other parties were to have an option to purchase the shares at a price equal to book value. Other agreements contained like sales provisions in the event any stockholder desired to sell or encumber *230 his or her stock, the price therefor to be book value, excluding good will. The agreements of November 18, 1939, November 30, 1940, and December 1, 1941, (expiring December 31, 1942) provided that in the event of the death of petitioner, his wife was to sell her stock to the other stockholders at a price equal to book value, excluding good will. The agreements of December 19, 1939, November 30, 1940, and December 1, 1941, obligated petitioner's wife to sell to the other stockholders at the same price, the stock in her name in the event petitioner did not, at specified times, enter into a written contract of employment with Deauville Bags, Inc., for the years 1941, 1942, and 1943, respectively. On October 31, 1942, the officers and directors continued the previous agreement, which would expire in December 1942, until March 31, 1943. In December 1942 an agreement was made, to expire and terminate December 31, 1943; and on March 26, 1943, agreement was made to continue the agreement which would terminate March 31, 1943, until June 30, 1943. The petitioner was a director and president and general manager of the corporation. He designed bags, did most of the selling and some of the *231 buying. The corporation operated at a loss until about 1936. In December 1940 it issued a 100 per cent stock dividend. By December 1941 petitioner had recovered from his financial difficulties and could have obtained a position elsewhere at a substantial salary. For these reasons he would have resigned his position with Deauville Bags, Inc., if he or his wife had ceased to be a stockholder of the corporation. Fein and Williams would not have agreed to a sale of the stock outstanding in the name of petitioner's wife if it would have resulted in the loss of petitioner's services to the corporation. In 1942 petitioner received about $9,000 from the corporation as compensation for services. The corporation did not pay a dividend in that year to petitioner's wife. On November 18, 1939, and until July 31, 1943, the corporation's stock was held in equal amounts by petitioner's wife, Jacob Fein, and Albert Williams. On July 31, 1943, the petitioner and the stockholders of the corporation executed an agreement by the terms of which the parties, after reciting that the corporation was to be dissolved and that they desired to form a partnership consisting of petitioner, Jacob Fein, and *232 Albert Williams, agreed, among other things, to surrender their stock in exchange for the corporation's assets in accordance with their respective interests, and petitioner's wife assigned to petitioner the assets to be received by her in the dissolution of the corporation, and petitioner, Jacob Fein, and Albert Williams formed a partnership under the name of Deauville Bags, to continue the business then being conducted by the corporation, each to contribute to the partnership the net assets received by him from the corporation and to share profits and losses equally. The agreement was effective August 1, 1943, and terminated at the close of that year. Fein and Williams did not, for business reasons, including inexperience of petitioner's wife in the manufacture of handbags, desire to enter into a partnership venture with petitioner's wife. No money consideration was paid by petitioner to his wife for the property he contributed to the partnership for a one-third interest therein, and she did not demand any consideration. When consenting to the transfer to petitioner of the property she was entitled to receive under her stock in dissolution proceedings, petitioner's wife did not *233 have an understanding with him on the loss of any part thereof or enter into an agreement with him on the sharing of profits from his interest in the partnership. Petitioner was general and sales manager and, as such, in charge of all of the activities of the partnership. He performed for the partnership the same kind of duties he had performed for the corporation. Petitioner gave to his wife in cash and bonds, aside from money for household expenses, 50 or more per cent of the money he received from his share of the business profits. Petitioner withdrew $9,474.86 from the partnership in 1943, and withdrew $19,890 in 1944. At the request of his wife, petitioner, during the last five months of 1943, purchased Government bonds in the amount of $4,700, payable to his wife and two sons, and $9,700 in 1944, in favor of the same payees, plus $2,000 additional in 1944 in his and her name. During 1945 he purchased bonds in the amount of $7,500, payable to his wife and sons. Commencing in June 1945, when withdrawal payments were large and petitioner did not wish to purchase Series E bonds, petitioner had checks of the total amount of $5,750 issued directly to his wife for one-half of his *234 withdrawals. Petitioner's wife had a separate bank account after August 1, 1943. In 1941, 1943, and 1944, petitioner's wife accompanied him on a total of four trips to assist him in sales. The expenses of petitioner's wife on the trips were paid by the corporation and its successor. Petitioner's wife rendered no other service to the corporation or its successor. After 1932 petitioner had no income other than from the corporation and the partnership. Petitioner's wife did not file an income tax return for 1943 or for any year prior thereto. In his return for 1943 petitioner reported $2,700 salary from the corporation, $2,138 long-term capital gain realized from 66 2/3 shares of stock of Deauville Bags, Inc., acquired in 1932 and thereafter to 1940, and $11,234.16 as income from the partnership, that being the full amount of income credited to the petitioner on the books of the partnership. Petitioner and his wife filed separate returns for 1944. Petitioner's return reported $22,864.03 of income from the partnership, less one-half thereof for "Participation of Isabel F. Sommers as per contract." The amount deducted by the petitioner was included in the return of his wife as income *235 from "Participation in Robert E. Sommers share of partnership profits, per contract." Petitioner's returns for 1943 and 1944, and for years prior thereto, were prepared by the same accountant. Petitioner signed his 1943 and 1944 returns. In his determination of the deficiency the respondent disallowed the deduction of $11,432.01 made by petitioners for his wife's share of his share of the net income of the partnership, and, after adjusting the partnership's earnings, included $23,691.28 thereof, or $12,259.27 in addition to the net amount of $11,432.02 reported by him, in petitioner's income upon the ground that the allocation made by petitioner was not bona fide for income tax purposes. He also held that petitioner's contributions to the partnership was derived from a loan from his wife in the amount of $12,611.10, that being the amount reported by petitioner in his 1943 return as the selling price of the stock of the corporation, and allowed him the amount of $756.67 as a deduction for interest thereon at the rate of 6 per cent per annum. Opinion No contention is being made by petitioner that his wife was a member of the partnership with Fein and Williams. Error by respondent *236 in taxing him on all of his distributive share of the profits of the partnership is based upon refusal to recognize a partnership or joint venture between him and his wife, under which his earnings from the partnership were to be shared equally. Petitioner relies, in part, upon Rupple v. Kuhl, 177 Fed. (2d) 823, and similar cases. In that case, Rupple, the taxpayer, was refused a bank loan to acquire funds for contribution to a partnership without collateral from his wife to secure the loan. After discussing the problem with his wife, it was agreed that she was to finance the investment, that Rupple would contribute his services, and that profits and losses from the partnership venture would be shared equally between them. Later, the loan was obtained on a note, signed by both, secured by a pledge of individual property of the wife, and the proceeds were paid to the partnership for a one-third interest therein. The court held that a joint venture existed between Rupple and his wife with respect to his interest in the partnership, and, accordingly, taxed him on only one-half of the income from his partnership interest. Questions of the kind involved herein require careful *237 consideration of all of the facts. Petitioner says that the partnership or joint venture between him and his wife was created by a verbal agreement reached in 1943 to the effect that in consideration of the transfer to him of assets distributable to her under her stock, she would be entitled to one-half of the income he derived from his partnership interest. Respondent argues that no agreement was entered into. Petitioner had the duty of proving such a relationship, and our first problem is to determine whether he met his burden. Petitioner testified on direct examination that when the formation of the partnership was being considered he and his wife discussed the matter and agreed that he should manage the interest to be acquired by him and divide the income with her equally. Testimony on cross-examination indicates that the agreement allegedly entered into in 1943 was nothing more than a continuation of the understanding had in 1932 respecting the stock. Petitioner's wife testified that if she had been asked the same questions propounded to petitioner that she would have given the same answers. Later, on direct examination, she testified that before the partnership was formed she *238 and petitioner agreed upon the transfer of her interest in the corporation to him; that he would manage it for her; and that the earnings from the partnership would be divided between them on an equal basis. On cross-examination she testified that there was no occasion for a new agreement in July 1943 in view of the one reached in 1932, and that the 1932 agreement was the only one she ever had with petitioner on the subject, and that it was reduced to writing in 1945. Thereafter at the hearing, leading questions on redirect examination developed testimony from petitioner's wife that a specific agreement was reached in 1943 as to partnership earnings. Some of such testimony was given after petitioner's counsel had asked her if she wished to change her testimony. In addition to that confusing and conflicting testimony, petitioner reported, as taxable to him, all of his distributive share of the earnings of the partnership in 1943, and his wife filed no return for 1943, which action is directly opposed to an agreement at any time with respect to a joint venture or partnership covering petitioner's income from the firm. The partnership existed for five months of 1943. Had the petitioner *239 and his wife then considered that she had income, in the amount of one-half of the $11,234.16 reported by him, it is difficult indeed to understand why she filed no return and he incurred greater tax rates by reporting the total amount. If they had a "specific" agreement for such division, as argued, the duty of each to return his share was equally specific, and would reasonably have been specifically in mind, especially since petitioner reported no income except salary from the corporation, capital gain from disposition of the corporation's stock and income from the partnership. Moreover, the wife testified that there was no agreement as to loss of the assets contributed to the partnership, and neither testified on the sharing of operating losses of the firm. Failure to so provide, though not conclusive, is some indication of lack of intent to form partnership. Stevens v. McKibbin, 68 Fed. 406; Cassidy v. Hall, 97 N.Y. 165. The return for 1943, as well as returns for prior years and for 1944, in which partnership earnings were divided equally, were prepared by the same accountant. Concerning the accountant's action in including all of the partnership's *240 earnings in his 1943 return, petitioner testified that he did not know why the accountant prepared it that way; that the accountant knew of his agreement with his wife "all the time" and had known about it "for years" and "all through the years"; that he did not discuss the agreement with the accountant in connection with preparation of the 1943 or 1944 returns, since he was and had been aware of it; and that he did not know why the accountant included all of the income in the 1943 return and only one-half in 1944. We have considered and weighed all of this testimony and find it self-contradictory. We conclude therefrom that, in fact, no agreement was entered into in 1943 with respect to partnership income from Deauville Bags. Such an agreement did not even under petitioner's theory exist during the length of time petitioner testified the accountant had had knowledge of it. Moreover it is inconsistent with realities for petitioner to return all of the income with the alleged incomesharing agreement in existence, also for the accountant to change the method, for 1944, without specific instructions from petitioner. It would be illogical to conclude that petitioner was not aware of the *241 manner in which the income was reported for 1943. Although the petitioner alleges and the answer admits, in effect, that the wife was the owner of one-third of the stock of the corporation, in his return for 1943 petitioner reported that he acquired the stock from 1932 to 1940 and included therein gain realized in 1943 on its disposition. Such report indicates that he regarded himself as the real owner of the stock at all times. If he had been such owner of the stock, there would be no logical basis for an agreement in 1943 such as contended for by petitioners; which is consistent with her statement that there was none. Assuming for discussion purposes, only, that an agreement was entered into in 1943, between petitioner and his wife, for division of his earnings from a partnership, as alleged by the petitioner, the proof fails to establish that such agreement between him and his wife created a joint venture or partnership between them in 1944, the year before us. The partnership formed in 1943 between the three men terminated by specific provision, at the close of 1943, and the proof does not indicate, but on the contrary negatives, any idea that the alleged husband-wife agreement *242 covered more than, or continued beyond the life of that particular partnership between the men. Petitioner testified that he and his wife continued in 1945 an arrangement between them similar to 1944 and the part of 1943 when the partnership arrangement existed. That testimony, without more, is obviously not enough to establish in 1944 the kind of an agreement between him and his wife, as contended for by petitioner, for the arrangement in 1944 is unknown. The record is devoid of proof as to the agreement for conduct of Deauville Bags business for 1944, the taxable year. The partnership agreement, as above seen, specifically provided for its termination on December 31, 1943. This is consistent with the series of earlier agreements made by the same parties with the corporation providing specially for termination at December 31 of each year; also with the fact that the previous agreement had been continued to March 31, 1943, and then to June 30, 1943. These parties had been clearly and carefully limiting, as to time, the legal situations created by them, and we may not logically assume that they intended the partnership to last longer than 1943, in view of the specific provision for *243 termination on December 31, 1943. Definite provision for that termination date negatives any intent that the partnership continue longer, in the absence of equally definite and written provision for continuance. What was the situation in 1944? Apparently the business continued, but upon what terms, after the termination of the partnership at the end of 1943, is not shown. The petitioner's theory is that the wife had an interest in petitioner's earnings from the partnership. In the absence of showing that there was a partnership between the three men in 1944, she is not shown to have any contractual interest in his earnings in 1944, the year before us, since the only contention is that she had a share in this part of profits in a partnership. The most that the record indicates as to 1944 is continuation of the business itself. We can not, without proof, infer a partnership between the three men with incidental right in the wife in petitioner's share, in 1944, or that the petitioner and wife intended a sharing of his earnings in 1944, at a time when no partnership is shown in existence. Though agreement of co-adventure or partnership need not be formal, it requires agreement express *244 or implied and intent not demonstrated here. Accordingly, we are unable to conclude, from all of the evidence, that a bona fide partnership or joint venture existed, for income tax purposes, between petitioner and his wife in 1944 with respect to petitioner's interest in the partnership. The conclusion so reached requires consideration of the alternative issues raised by the petitioner. The petitioner contends under the first two alternative questions that $11,432.01, the amount of partnership income be allocated to his wife in his return, is deductible as an ordinary and necessary expense in a business or for the production of income within the meaning of section 23 (a) (1) (A) and (2) of the Code. His argument, like the contention he made under the primary issue, is based upon the existence of an agreement with his wife for an equal division of his share of the profits of the partnership. The nature of the alleged deduction is such that there could be no liability for an expense item of 50 per cent of the advances, without an agreement to pay. Cases relied upon by the petitioner such as Canfield v. Commissioner 168 Fed. (2d) 907, and Hartz v. Commissioner, 170 Fed. (2d) 313, *245 involved payments made in accordance with partnership agreements. Here, as we have already pointed out, there is no proof of an agreement entered into in 1943 for a division of earnings from partnership profits as joint adventurers or partners, and no proof at all as to a 1944 partnership. No evidence was offered to prove an agreement to pay any specified amount for the mere use of funds of the wife for investment in the partnership, without any connection with an association as joint ventures or partners. We hold the amount claimed not to be deductible business expense. The facts respecting the interest question, the remaining alternative issue, bear upon the expense deductions. The Commissioner, in determining that no partnership between petitioner and wife existed for income tax purposes, construed petitioner's contribution to the partnership as a loan from his wife and allowed him a deduction of interest thereon at the rate of 6 per centum per annum. The petitioner insists that the investment was made by the wife in a joint venture and not in a loan to him, but that if a loan was made, the respondent had no right to reduce the interest thereon below one-half of petitioner's earnings *246 from the partnership. The nature of the transaction between petitioner and his wife was a question of fact, subject to being determined by the respondent. His ruling here is presumed to rest upon a correct determination of the facts. Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289. We have found that there was no agreement between petitioner and his wife with respect to a division, as joint adventurers or partners. of the former's share of the profits of the business. The parties are in accord that the funds involved were those of the wife. In the absence of agreement, one has a right to reasonable compensation for the use of money. Miller v. Robertson, 266 U.S. 243; Continental Nat'l Bank v. Ollney Nat'l Bank, 33 Fed. (2d) 437; 47 C.J.S. 22. The Commissioner allowed a deduction apparently on that theory. Even if his theory was wrong, the petitioner has the burden of proving the deficiency to be wrong and, if justified by the facts, should be upheld, though the reason for determining it be unsound. Edgar M. Carnrick, 21 B.T.A. 12, 21; Estate of Sallie Houston Henry, 4 T.C. 423, 437. We can not, under all *247 the facts proven, say that the Commissioner erred. He did not alter a contract made, or make one for petitioner and his wife, but allowed a deduction. We find no error in the allowance of the deduction. Accordingly, we sustain the respondent's allowance under the alternative issues. Decision will be entered for the respondent.