JETTON v. TOBEY.

Opinion delivered February 22, 1896.

SALE—TITLE CONVEYED.—As a general rule, no one can transfer to another a better title than he has himself.

SAME—BONA FIDE PURCHASER.—The mere possession of personal property, without other evidence of title or authority from the

owner to sell, will not enable the possessor to confer a better title than he actually has, although the purchaser has no notice of any defect in his vendor's title.

BONA FIDE PURCHASER—WHO IS NOT.—One who purchases personal property on credit and never pays for it is not entitled to protection as a *bona fide* purchaser.

REPLEVIN—WHO MAY BRING.—A special constable who seizes personal property under attachment acquires such a right to the possession as entitles him to maintain replevin against one who wrongfully obtains possession of such property.

Appeal from Franklin Circuit Court, Charleston District.

JEPHTHA H. EVANS, Judge.

*Rowe & Rowe* for appellant.

1. It was error to refuse the instructions asked by plaintiff. 38 Ark. 529; 34 *id.* 707; *id.* 399.

2. The court's instructions were erroneous. A purchase of property actually in the custody of the law is utterly void, and no title whatever is acquired. 11 Ark. 411.

3. The institution of the suit is constructive notice to all purchasers after suit commenced, and there can be no innocent purchaser. 12 Ark. 421; 16 *id.* 175; 13 Am. & Eng. Enc. Law, p. 893, sec. 9.

*T. A. Pettigrew* for appellee.

1. The instructions asked by plaintiff were properly refused. 38 Ark. 334; 43 *id.* 184; 34 *id.* 469; 37 *id.* 580.

2. The instructions given by the court were clear and complete, and met every phase of the case. The conduct of David Looney and the circumstances show authority for his brother to act for him, but it is only necessary that there be appearance of authority, if caused by himself. Parsons on Cont. (6 Ed.) p. 46. Adopting the acts of his brother in part is an adoption of the

whole agency. *Id.*, sec. 52 and notes. He is estopped
to deny the agency. *Id.*, sec. 50.

3. It is true that a purchaser *pendente lite* acquires
no title that he can assert to the prejudice of parties lit-
igant, but he may acquire a title that he can assert
against his vendor, who is a party to the suit. 12 Ark.
421. The testimony shows that the Jettons released
this property to Falconer, and between them and Fal-
coner the doctrine of *lis pendens* does not apply.

BATTLE, J. Three creditors of David B. Looney,
to-wit, Fleetwood Morris, R. M. Jetton, and J. P. Fal-
coner, brought three separate actions against him before
a justice of the peace of Sebastian county, each one
suing for himself, and causing an order of attachment
to be issued in his case. A. P. Jetton was duly
appointed to serve process in the action instituted by R.
M. Jetton. A mare and other property of the defendant
were attached, the mare being first attached in the suit
instituted by R. M. Jetton, and thereafter in the other
two actions. After this the attaching creditors met to
divide the property among themselves, some witnesses
say, for the purpose of saving costs, and to hold subject
to the attachments, and another says, for the purpose of
paying the debts of the defendant to themselves, the
brother of the defendant (who had possession of the
property at the time it was attached) assenting. In
the division the mare was delivered to Falconer, who
carried her to Franklin county, and sold her to Franklin
Tobey on a credit. Thereafter, A. P. Jetton, who
served the order of attachment sued out by R. M. Jet-
ton, demanded the mare of Tobey, and, he refusing to
comply with the demand, brought this action against
him for her possession in Franklin county. The prop-
erty sued for was delivered to the plaintiff. In the
meantime David B. Looney, having been absent, re-

turned, and compromised and paid his indebtedness to Morris and R. M. Jetton; and the three actions against Looney were dismissed, the attachments were discharged, and the mare was returned to him (Looney) by A. P. Jetton, who had previously gained possession of her by the suit against Tobey. The dismissal of the action of Jetton against Looney and the discharge of the attachment therein were subsequent to the institution of the suit against Tobey. There does not appear to have been any payment of the indebtedness of Looney to Falconer.

In the trial of the issues in the action against Tobey, the foregoing facts were shown by the evidence. It was further shown that Tobey. had no notice of any defect in the title of Falconer to the mare at the time he purchased her. Upon this evidence the court instructed the jury as follows: "The plaintiff claims possession of the property by reason of the fact that he had levied upon the same by virtue of a writ of attachment against David Looney in favor of Marion Jetton. If plaintiff was appointed by the justice of the peace to serve the writ of attachment in the Jetton case, and the mare was delivered to Falconer by the plaintiff in this case, or Marion Jetton and Falconer brought the mare from Sebastian to Franklin county, and Falconer sold the mare to Tobey with notice to Tobey of the situation of the property, then plaintiff can recover, unless Falconer obtained the mare under a compromise with George Looney, and George Looney had authority from David Looney, expressed or implied from the circumstances, to make the compromise in the Falconer case, and delivered the mare to him in settlement of Falconer's claim, in which event plaintiff is not entitled to recover. If J. P. Falconer obtained possession of the mare as explained in the above instruction, either in lawful compromise with George Looney, and he was Looney's

agent, or otherwise under agreement with plaintiff or Marion Jetton, and conveyed the mare from Sebastian to Franklin county, and sold her to Tobey for cash or on a credit, and at the time of sale Tobey had no notice or knowledge of the condition of the title of the property, and bought believing he was getting a good title, defendant Tobey is entitled to recover."

The jury returned a verdict in favor of the defendant. A judgment was rendered accordingly, and the plaintiff appealed.

The jury were virtually told by the instructions of the court that if Tobey purchased the property in controversy in good faith, without any notice of any defect in the title of his vendor, he was entitled to recover, notwithstanding the person from whom he purchased had and was entitled to nothing more than possession. That is not true.

Title conveyed by sale. A general rule of the law of personal property is that no man can sell that which he has not and is not authorized by the owner to transfer, or confer a better title than that he has. An honest purchaser under a defective title cannot hold against the true proprietor. "No one can transfer to another a better title than he has himself, is a maxim," says Chancellor Kent, "alike of the common and civil law, and a sale, *ex vi termini*, imports nothing more than that the *bona fide* purchaser succeeds to the rights of the vendor." To this rule, however, there are exceptions. Among them are enumerated the following: Transfers of money, bank bills, checks, and notes payable to bearer or transferable by delivery in the ordinary course of business to a person taking them *bona fide* and paying value for them: (*Fawcett* v. *Osborn*, 42 Ill. 411), *bona fide* purchases from fraudulent buyers, or others having a voidable or defeasible title; and, in England, sales in market overt, an exception which does not prevail in this country.

Mr. Freeman, in his valuable notes to *Williams* v. *Merle*, 25 Am. Dec. 611, says: "Most of the exceptions to the general rule that a *bona fide* purchaser gets no title if the vendor is not the owner arise from the fact that the real owner has voluntarily clothed such vendor with the apparent ownership or authority to sell. The nature and extent of the exceptions of this class are very clearly stated in the learned opinion of Mr. Senator Verplanck, in *Saltus* v. *Everett*, 20 Wend. 278. After some remarks on transfers of notes, bills, etc., he says: "After a careful examination of all the English cases and those of this state that have been cited or referred to, I come to this general conclusion, that the title of property in things movable can pass from the owner only by his own consent and voluntary act, or by operation of law; but that the honest purchaser, who buys for a valuable consideration in the course of trade, without notice of any adverse claim, or any circumstances which might lead a prudent man to suspect such adverse claim, will be protected in his title against the original owner in those cases, and in those only, where such owner has, by his own direct, voluntary act, conferred upon the person from whom the *bona fide* vendee derives title the apparent right of property as owner, or of disposal as an agent. I find two distinct classes of cases under this head, and no more: (1) The first is when the owner, with the intention of sale, has in any way parted with the actual property of his goods, with his own consent, though under such circumstances of fraud or error as would make that consent revocable, rescind the sale, and authorize the recovery of the goods as against such vendee. But if the property passes into the hands of honest purchasers, the first owner must bear the loss. Thus, to take an instance from our own Reports, where goods were obtained by a sale on credit, under a forged recommendation and guaranty, and then sold to a *bona fide* purchaser in the customary

course of trade, the second buyer was protected in his possession against the defrauded original owner. *Mowrey* v. *Walsh*, 8 Cow. 243. * * * * (2) The other class of cases in which the owner loses the right of following and reclaiming his property is where he has, by his own voluntary act or consent, given to another such evidence of the right of selling his goods as, according to the custom of trade, or the common understanding of the world, usually accompanies the authority of disposal; or, to use the language of Lord Ellenborough, when the owner 'has given the external *indicia* of the right of disposing of his property.' Here it is well settled that, however the possessor of such external *indicia* may abuse the confidence of his principal, a sale to a fair purchaser divests the first title, and the authority to sell so conferred, whether real or apparent, is good against him who gave it."

When innocent purchaser's title not good.

The mere possession of personal property, without other evidence of title, or authority from the owner to sell, will not enable the possessor to confer a better title than he actually has. As said by Chief Justice Brickell in *Leigh* v. *Mobile & Ohio R. Co.* 58 Ala. 178, "possession is *prima facie* evidence of the ownership of all species of personal property. It is but *prima facie*, and whoever deals alone on the faith of it must accept it as such, and in subordination to the paramount title, which would prevail over it, if the possession was not changed by the transaction into which he enters. If this be not true, a felon acquiring possession by theft could, by a sale to an innocent purchaser, divest the true owner of his property. A naked bailee, intrusted with possession, could dispose of goods to the prejudice of his principal. A case does not fall within the exception unless the owner confers on the vendor other evidence of ownership, or of authority to dispose of the goods, than mere possession." As an example, take the case of *Simpson* v.

*Shackelford*, 49 Ark. 63. The owner in that case conditionally sold and delivered a corn mill, with the understanding that the title would remain in him until the purchase money was paid. The vendee sold to. another without any notice of any defect in his title, and delivered possession. The purchase money of the first sale was not paid, and the original vendor sued for the property, and recovered it; the court holding that the second vendee, though a *bona fide* purchaser, acquired no title as against him. *McMahon* v. *Sloan*, 12 Penn. St. 229; *Andrew* v. *Dieterich*; 14 Wend. 31; *Covill* v. *Hill*, 4 Denio, 323.

If, in this case, Falconer did not acquire title to the mare in controversy by purchase from Looney, or an agent authorized to dispose of her in payment of his debts, he was a mere custodian of her at the time he sold her to Tobey, and held her subject to the right of the special constable to take possession. He could have acquired no other right from A. P. Jetton in his official capacity; and, consequently, if this was all the claim he had, transferred no title by the sale to Tobey.

Another fact that defeats Tobey's right to the claims of a *bona fide* purchaser is, he purchased on a credit, and never paid the purchase money. <span style="float:right">Who is not a *bona fide* purchaser.</span>

A. P. Jetton, as special constable, acquired a special property and right to the possession of the property when he seized under the order of attachment, and had the right to institute this action. He was liable to David B. Looney for her when the attachments were discharged, if Looney was then her owner, and, of course, was entitled to her possession for the purpose of discharging that obligation. <span style="float:right">Right of officer to bring replevin.</span>

One of the reasons assigned why the verdict of this jury in this case should be set aside is the alleged misconduct of an interested party and two jurors during the

progress of the trial. While it is not necessary to the disposal of this appeal to pass upon this assignment of error, or to ascertain whether it be based on fact, it may not be amiss to say, without reference to it, that the treating, feeding, or entertaining of jurors by the parties or their counsel during the progress of a trial in a cause in which they have been selected as a jury, whatever the motive may be, is highly improper, and deserves severe condemnation. For such conduct by successful parties, verdicts have been set aside, and new trials granted. 2 Thompson on Trials, sec. 2564, and cases cited. No one in whose behalf such an influence has been exerted on jurors ought to be entitled to the enforcement of a verdict rendered in his favor under such circumstances. The purity and integrity of jury trials should be preserved, so far as it can be lawfully done.

Reversed and remanded.