## LOCKWOOD BROS. v. FRISCO LUMBER CO.

No. 834. Ind, T.    Opinion Filed September 10. 1908.

(97 Pac. 562.)

1.  **SALES—Conditional Sale—Purchase from Vendee.** Where a chattel is sold with a reservation of title in the vendor until the price is paid, the title remains in him unti the condition is performed, and a purchaser of the vendee acquires no title, though he buys in good faith for a valuable consideration and without notice of the condition.

2.  **SAME—Parting With Possession.** Simply intrusting the possession of chattels to another by the owner under a conditional executory contract of sale is insufficient to estop the owner from setting up title thereto against an innocent purchaser thereof for value and without notice of the condition from the person so intrusted.

(Syllabus by the Court.)

*Error from the United States Court for the Central District of the Indian Territory, at Antlers; T. C. Humphreys, Judge.*

Action in replevin by the Frisco Lumber Company against Lockwood Bros. Judgment for plaintiff, and defendants bring error. Affirmed.

On June 19, 1906, the Frisco Lumber Company, a corporation, defendant in error, plaintiff below, sued C. B. Lockwood and H. A. Lockwood, partners as Lockwood Bros., plaintiffs in error, defendants below, in the United States Court in the Indian Territory, Central District, at Antlers, in replevin, to recover certain personal property. For answer defendants filed in effect a general denial, and set up title to the property, claiming to have bought it of one Reuben Stone, the alleged former owner, in good faith and for value; that he was in possession of said property, with the apparent right to sell and dispose of the same; and that they had no knowledge of any claim asserted by plaintiff to said property. There was trial to a jury, which

resulted in a judgment for plaintiffs for the property in question, the total value of which was assessed at $1,088, and for damages for its unlawful detention. There was motion for a new trial, which was overruled, whereupon defendants filed petition for writ of error and assignment of errors, and prosecuted their appeal to the United States Court of Appeals in the Indian Territory, and the same is now before us for review as the successor of that court.

*Brizzolara & Fitzhugh* and *T. J. Barnes*, for plaintiffs in error.

*W. P. Stewart, P. L. Soper, J. H. Huckleberry*, and *Thomas H. Owen*, for defendant in error.

TURNER, J. (after stating the facts as above). There is very little conflict in the testimony: The evidence, in substance, discloses that Frisco Lumber Company, defendant in error, hereafter called plaintiff, was in December, 1905, engaged in the lumber business near Bokhoma, Ind. T., having in its employ one Reuben Foote, whom it desired to equip for logging and hauling the same to its sawmill, and about that time sent him into Arkansas to buy property for that purpose. He went, and later returned with one Stewart, from whom he had bought for the company 17 head of cattle and two wagons, complete, with yokes and chains, for which the plaintiff took from him a bill of sale, dated December 28, 1905, and paid him $700; that a short time thereafter it again sent Foote into Arkansas, together with one Weathers, another employe, on a similar mission, where they together bought for plaintiff on February 2, 1906, seven yoke of oxen and one yoke of bulls with yokes and chains complete; also two log wagons, and hooks and logging chains with each wagon, complete, from one W. A. Laster, taking a bill of sale from him therefor to plaintiff, agreeing to pay him $10 cash in hand, which they did, and $490 on delivery of the property to plaintiff at Bokhoma, Ind. T., which said deferred payment was later paid to him by plaintiff on delivery of the property as agreed.

These bills of sale were in evidence and cover the property in controversy in this cause. After they were executed and the property delivered to plaintiff, the same was turned over by it to Foote to work under a parol agreement that at any time he would pay plaintiff the amount it had paid for the property that plaintiff would make him title thereto. It was further agreed that plaintiff would advance feed and groceries and enough money to pay off Foote's men employed by him in logging, which it afterwards did from time to time; the same being evidenced by open account, in sums amounting in all to about $500. On this account was also charged the amount plaintiff had paid for the property turned over to Foote pursuant to said agreement. Foote at night kept the cattle separate from those of the company in a corral some two miles away on the company's leased logging grounds, and during the day, when not working, permitted them to run at large. Plaintiff had nothing to do with the management of these cattle after they were turned over to him, and they were referred to as Foote's cattle. They were kept in his possession, and fed and worked as though they were his own, and used by him in hauling logs to the company's sawmill; he being allowed the same price for hauling as if he owned the cattle. Plaintiff cashed his orders given to his hands while so doing, he furnishing his own men to drive them, and took no lien on the cattle or security of any kind from Foote for the debt other than stated.

On June 16, 1906, Foote, who claimed title thereto, sold the property in controversy to Lockwood Bros., hereafter called defendants, who bought the property in good faith and for value. Foote then left the country and has not since returned, leaving plaintiff unpaid for the property, and leaving also unpaid his open account with it. On June 10, 1906, plaintiff took possession of the property and left a man in charge, from whom and over his protest defendants took possession of said property, which they have since retained.

The law applicable to the facts in this case is well settled

and of easy application. In the language of 1 Mechem on Sales, § 154:

"It is a fundamental doctrine of the common law, from which all discussion of the question must proceed, that, in general, no one can transfer a better title to a chattel than he himself possesses."

Again (section 155):

"The universal and fundamental principle of our law of personal property is that no man can be divested of his property without his own consent, and, consequently, that even the honest purchaser under a defective title cannot hold against the true proprietor."

It is apparent and conceded that the transaction between plaintiff and Foote was a conditional sale, in which plaintiff reserved title to itself until the purchase money was paid. Until this condition was performed by Foote, it necessarily follows that the title to the property remained in the plaintiff, and that Foote, having no title, could convey none, even to an innocent purchaser for value, as defendants contended they were and may be conceded to be. Mechem (section 599) says:

"It is thus clear, as has been seen, that the conditional contract of sale is effective to preserve the title of the vendor from the claims of the vendee's creditors. It is also effective as against subsequent purchasers from the vendee with notice of the condition. Whether it is also operative against *bona fide* purchasers from the vendee who have no notice of the condition has been the subject of much controversy; and it is now settled by the great weight of authority that, unless otherwise declared by statute, such *bona fide* purchaser acquires no better title than his vendor had. Such has been the holding in Alabama, Arkansas, California, Connecticut, Delaware, Florida, Georgia, Indiana, Iowa, Kansas, Maine, Massachusetts, Michigan, Missouri, Mississippi, Montana, Nebraska, New Jersey, New Hampshire, New Mexico, New York, North Carolina, Tennessee, Texas, Utah, Vermont, Virginia, South Carolina, Ohio, Oregon, Rhode Island, Washington, and perhaps other states, in Canada, and the Supreme Court of the United States. [Citing authorities.]"

In *McIntosh & Beam v. Hill*, 47 Ark. 363, 1 S.W. 680, this

doctrine is upheld as the established rule in Arkansas, and in the syllabus the court said:

"Where a chattel is sold, with a reservation of title in the vendor until the price is paid, the title remains in him until the condition is performed, and a purchaser from the vendee acquires no title, though he buys in good faith, for a valuable consideration, and without a notice of the condition."

See, also, *McRea v. Merrifield et al.*, 48 Ark. 160, 2 S. W. 780; *Simpson v. Shackelford*, 49 Ark. 63, 4 S. W. 165; *Triplett v. Mansur*, 68 Ark. 230, 57 S. W. 261, 82 Am. St. Rep. 282. This is also the doctrine laid down and approved by the United States Court of Appeals in the Indian Territory in *Gentry. v. Singleton*, 4 Ind. T. 346, 69 S. W. 898, which case was affirmed in 128 Fed. 679, 63 C. C. A. 231.

But it is contended by the defendants that, inasmuch as they were innocent purchasers for value of the property from Foote, who was in possession with apparent right to sell, and that they had no knowledge that plaintiff asserted title to the property, the court erred in refusing to instruct the jury:

"If you believe the plaintiff knowingly permitted one Foote, while in possession of said property, to hold himself out as the owner thereof, and if you further believe that defendant bought said property from said Foote, believing him to be the owner thereof, and paid a fair consideration therefor, then your verdict must be for the defendant, even though plaintiff was in fact the real owner of said property."

It is well established:

" * * * That where the true owner holds out another, or allows him to appear, as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance."

Section 158:

"In order, however, that this rule shall operate, it is essential that the acts relied upon as indicating ownership by the possessor shall be acts for which the true owner is responsible; for it is clear that no acts of the possessor alone can suffice to cut off the rights of the true owner."

Just what acts of the company are relied upon in this connection is not clear. Just how it permitted Foote to hold himself out as the owner of the property defendants do not undertake to say. There is conflicting testimony to the effect that plaintiff knew he was trying to sell this property; but when it knew it, or whether it knew it in time to prevent this sale, or whether it knew he was about to sell it to defendants, nowhere appears. That the officers of the company and employes referred to the cattle as Foote's cattle might be fairly inferred; but, outside of intrusting him with the possession of the property, we cannot see, after a close scrutiny of this record, wherein plaintiff clothed Foote with such *indicia* of title as will estop it to assert title in itself. Intrusting him with mere possession is not sufficient.

1 Mechem on Sales §156, quoting approvingly from *McNeal v. Tenth National Bank,* 46 N. Y. 325, 7 Am. Rep. 341, which in turn quoted approvingly Judge Denio, in *Covill v. Hill,* 4 Denio (N. Y.) 323, says:

"Simply intrusting the possession of a chattel to another as depositary, pledgee, or other bailee, or even under a conditional executory contract of sale, is clearly insufficient to preclude the real owner from reclaiming his property, in case of an unauthorized disposition of it by the person so intrusted. The mere possession of chattels, by whatever means acquired, if there be no other evidence of property or authority to sell from the true owner, will not enable possessor to give a good title."

See, also, *Gellon v. Tobey,* 62 Ark. 84, 34 S. W. 531.

We are therefore of the opinion that there was no evidence on this point to support this instruction, and for that reason the

court did not err in refusing to give it, or the preceding one, which expressed practically the same idea.

Again, it is claimed that the court erred in refusing to give the following:

"If you believe from the evidence that plaintiff bought said property from Stewart and Laster, and took a bill of sale of same to plaintiff, and that plaintiff afterwards sold said property to Reuben Foote and held its bill of sale from Laster and Stewart as security for said property, then the court instructs you that said bills of sale are void as to defendant, and your verdict should be for defendant."

This instruction is misleading. There is no proof to support that part of the charge that plaintiff "held its bill of sale from Laster and Stewart as security for said property." The property in question is not covered by bill of sale from Stewart and Laster, but is covered by two bills of sale, one from Stewart and one from Laster. The undisputed testimony is that these bills of sale were preserved by plaintiff, presumably as evidence of its title, and not as security. It took no security for the debt at all, other than to reserve title in the property. For the reason that it is misleading, and that there is no evidence to support it, we do not think the court erred in refusing to so charge.

But it is claimed that the court erred in refusing to give the following special charge tendered by the defendant:

"Even though the Frisco Lumber Company owned this property, and stood by and knew that Foote claimed the property and claimed the right to sell it, and stood by and permitted Foote to sell it to Lockwood, then the plaintiff would be estopped from setting up title to the property, and would not be permitted to recover in this action."

It would have been well had the defendants pointed out that part of the testimony wherein it is shown that plaintiff was chargeable with knowledge that Foote was about to sell this property to Lockwood Bros., or any one else. We fail to find it in the record, and for that reason we say there was no evidence on which to base this instruction.

We have carefully examined the remaining requests for instructions offered by defendants and refused by the court, and cannot say that the court erred in refusing to give any of them. We have also examined the charge of the court as given and excepted to by defendants, and find that the same fairly states the law as above indicated.

But it is insisted that certain evidence offered by plaintiff was improperly admitted by the court over the objection of defendants, and that Frank Stone, the company's general manager, was permitted to testify that he had given Weathers, the company's foreman, instructions to take possession of the property in controversy, and that he had learned from him that he had taken possession thereof about the 12th of June, 1906, and that Foote had made no objection. As this testimony was not in support of any material issue in this case, it was irrelevant, and should have been excluded. At the same time we fail to see what harm it did, and as none has been intimated we will pass to the next objection.

It is next urged that the court erred in permitting Stone to testify, in substance, "that it was customary in a sale of cattle to take a bill of sale for same, and it was not customary for mill men to sell cattle without reserving title thereto." We think it only necessary to say that the first part of this objection was asked as one question, and was not objected to, and that the latter part was not asked.

The next objection is that, "in order to show that one Johnson was agent of the plaintiff in error, with authority to bind them by his declarations and admissions," the court erred in permitting T. A. Stewart "to testify that Lockwood said that Johnson was his woods foreman." These alleged declarations and admissions, which it is indicated Johnson made, and by which it is claimed defendants are not bound, are nowhere set forth; and as we have gone over the testimony, and failed to find any relied on by plaintiff, we do not think this objection is entitled to serious consideration. Furthermore, it appears on pages 45 and 47

that the testimony complained of was ruled out, as was also the testimony next complained of.

It is objected that "the witness Haven was permitted to testify that he understood that plaintiff had reserved title to the property, and was also allowed to testify that Foote had told him in the absence of the defendant that the cattle belonged to plaintiff," and that this witness was also permitted to testify "that the charge upon plaintiff's book against Foote for the amount of the purchase price of the cattle would represent that plaintiff had reserved title to the property." This last objection is not true. The witness, who was plaintiff's bookkeeper, testified on behalf of the defendant, and on cross-examination said: "Q. Please state to the jury whether or not this journal entry represented a sale and the passage of title of these cattle to Foote. A. No, sir." This question and answer were not objected to. The question and answer objected to next followed, and were: "Q. When was Foote to get the title to the cattle. A. When he had earned enough hauling logs to pay for them." This was the understanding of the witness concerning the title, which he had gathered from Foote in conversation with him as bookkeeper in the regular course of his business, in which plaintiff had threatened him that, unless he made a better showing, the cattle would be taken away from him and put with another man. The point as to the title being in the plaintiff had been previously testified to by Stone, and was uncontradicted and practically conceded. This evidence was only cumulative as to his understanding from Foote, and for that reason we cannot see how it was prejudicial.

The next objection is:

"The court refused to permit Ed Harris, a witness for defendants, to testify that Haywood, plaintiff's general manager, had informed him that the cattle belonged to Foote and that plaintiff had no claim upon them."

By this testimony defendants sought to show that the general manager, by asserting that the property belonged to Foote,

had estopped plaintiff from claiming it as against them. The court expressly held that it would admit in evidence the statements of the managers of either party, whoever he might be; but it appears from the record that this statement was not admitted. for the reason that the proof failed to disclose that Mr. Haywood was plaintiff's general manager at that time, and, therefore, had no right to bind it by any statement he might make.

The remaining assignments of error are not seriously contended for, and may well be considered as abandoned.

We are therefore of the opinion that the verdict and judgment upon the whole record is right, and for that reason the judgment of the lower court should be affirmed; and it is so ordered.

All the Justices concur, except Williams, C. J., not participating.