### In re TERRELL.

### ANDERSON v. OKLAHOMA MOLINE PLOW CO.

(Circuit Court of Appeals, Eighth Circuit. October 15, 1917.)

No. 164, Original.

1. BANKRUPTCY ⬯140(1)—PROPERTY PASSING TO TRUSTEE—PROPERTY ACQUIRED BY CONDITIONAL SALE.

Under Rev. Laws Okl. 1910, § 2894, providing that, "in the absence of fraud, every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract," and the decisions of the Supreme Court of the state, a contract of conditional sale of personal property retaining title in the seller until the price is paid in full, although not filed for record as required by section 6745, to be valid against "creditors," in the absence of fraud, is valid as between the parties and as against creditors of the purchaser existing at the time the contract was made, or who became such subsequent thereto, who had not acquired specific liens on the property prior to the purchaser's bankruptcy.

2. BANKRUPTCY ⬯151—LIENS VESTED IN TRUSTEE.

The provision of Bankr. Act July 1, 1898, c. 541, § 47a(2), 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1916, § 9631), that "trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon," vests the trustee with such lien only from the date of the filing of the petition, and such lien only as a creditor might acquire on that date and necessarily subject to prior rights in the property.

3. BANKRUPTCY ⬯163—PREFERENCES—PROPERTY ACQUIRED BY CONDITIONAL SALE.

Where a bankrupt obtained possession of personal property under a contract of conditional sale, reserving title in the seller until full payment of the price, and which under the law of the state, although unrecorded, was valid between the parties and as against all creditors of the bankrupt not having acquired liens on the property, the fact that the contract was filed for record within four months prior to the bankruptcy did not make the transaction a transfer of property by the bankrupt, which could be attacked by the trustee as preferential under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562, as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (Comp. St. 1916, § 9644).

Petition to Revise Order of the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

In the matter of J. E. Terrell, bankrupt. Petition of E. R. Anderson, trustee, to revise, in matter of law, an order directing the surrender of property to the Oklahoma Moline Plow Company, claimant. Petition denied.

J. C. Willingham, of Oklahoma City, Okl. (Morse, Standeven & Willingham, of Oklahoma City, Okl., on the brief), for petitioner.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

David I. Johnston, of Oklahoma City, Okl. (James R. Keaton, Frank Wells, and George G. Barnes, all of Oklahoma City, Okl., on the brief), for respondent.

Before HOOK, Circuit Judge, and REED and BOOTH, District Judges.

REED, District Judge. The bankrupt, J. E. Terrell, was engaged in the general mercantile business in Texola, Beckham county, Okl., from some time prior to July 9, 1912, up to and including February 3, 1914, when an involuntary petition in bankruptcy was filed against him upon which he was duly adjudicated a bankrupt on February 24th following, and the petitioner, Anderson, was in due time appointed trustee in bankruptcy of his estate.

On July 9 and again on August 3, 1912, the bankrupt entered into separate written contracts with the Oklahoma Moline Plow Company, a corporation, for the conditional sale by the plow company and purchase by the bankrupt of certain farm property described in said contracts which provide that the title and right to the possession of the property shall remain in the plow company until the agreed price therefor shall be paid in full. The property so conditionally sold was delivered to the bankrupt about the date of the respective contracts, but they were not recorded until December 30, 1913, when they were duly filed for record in the proper county in which the property was situated. The petitioner as trustee, upon his appointment and qualification, took possession of the property of the bankrupt estate, also a part of the property so conditionally sold and delivered by the plow company to the bankrupt. Between the date of the contracts, and the filing thereof for record, other persons became creditors of the bankrupt for goods sold to him on credit, but who have no lien upon the property described in the contracts, or any part of the bankrupt estate other than such lien, if any, as the petitioner may have as trustee for their benefit under section 47a (2) of the Bankruptcy Act as amended June 25, 1910. The plow company not having been paid for the property, in due time filed its petition with the referee for an order requiring the trustee to return to it the property in his custody described in the conditional sale contracts. Upon a hearing of such petition the referee sustained the same and ordered the trustee to return such property to the plow company. Upon petition for review by the trustee, the order of the referee was approved by the judge, and the petitioner brings this proceeding to revise in matter of law the order so approving the order of the referee upon the ground; that under the Oklahoma statute the conditional sale contracts not having been filed for record were void as against creditors of the bankrupt who became such prior to the recording of the contracts on December 30, 1913, though they have not by attachment or otherwise secured or fastened a lien upon the property, prior to the bankruptcy.

The questions for determination are:

(1) Are the contracts of conditional sale void under the Oklahoma statute as to general creditors of the bankrupt who became such between the date of such contracts and the filing of the same for record,

but who have acquired no lien upon the property by attachment or otherwise, prior to the bankruptcy?

(2) Does the trustee in bankruptcy under section 47a (2) of the Bankruptcy Act as amended in 1910, acquire any greater rights in or to the property acquired by the bankrupt under conditional sale contracts made and to be performed in Oklahoma than the bankrupt has?

[1] The applicable provisions of the Oklahoma statute as appear in the Revised Laws of Oklahoma (1910) are:

"Sec. 2894. In the absence of fraud, every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract."

"Sec. 4031. A mortgage of personal property, is void as against creditors of the mortgagor, subsequent purchasers, and incumbrancers of the property, for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated. * * * *"

"Sec. 6745. Any instrument in writing, or promissory note, evidencing the conditional sale of personal property, which retains the title to the same in the vendor until the purchase price is paid in full, shall be void as against innocent purchasers, or the creditors of the vendee, unless the original instrument, or a true copy thereof, shall have been deposited in the office of the register of deeds in and for the county wherein the property shall be kept; and when so deposited, it shall be subject to the law applicable to the filing of chattel mortgages; and any conditional, verbal sale of personal property, reserving to the vendor any title in the property sold, shall be void as to creditors and innocent purchasers for value."

Counsel for each of the parties have filed extensive briefs citing many authorities in support of their respective contentions, to review all of which would unduly extend this opinion, and we deem it necessary to refer in the main only to those which declare the law of Oklahoma and construe the statutes of that state bearing upon the question involved.

There is no claim of any actual fraud between the plow company and the bankrupt in the making of these contracts, or in withholding them from record, and they are valid as between the parties though not filed for record; also as against creditors of the bankrupt existing at the time they were made, or who became such subsequent thereto, who have not acquired specific liens upon the property covered by the contracts prior to the bankruptcy (Revised Laws of Oklahoma [1910] § 2894, above; McCormick v. Koch, 8 Okl. 374, 58 Pac. 626, decided in 1899); and no title passed to the bankrupt until the purchase price of the property was paid as specified in the contracts; (McIver v. Williamson Co., 19 Okl. 454, 92 Pac. 170, 13 L. R. A. [N. S.] 696, decided in 1907, and cases cited); nor had the bankrupt any attachable interest in the property covered by the contracts before the purchase price was paid (Lockwood v. Frisco Lumber Co., 22 Okl. 31, 97 Pac. 562, decided in 1908); nor have creditors without a lien upon the property any standing in court to challenge the title of the plow company to the property (Chandler v. Colcord, 1 Okl. 269, 32 Pac. 330, 335, decided in 1893).

That the contracts in question are valid as between the parties, though not recorded, cannot be successfully controverted, is also settled by repeated decisions of the Supreme Court of the United States

(Fosdick v. Schall, 99 U. S. 235, 250, 25 L. Ed. 339), even in states where under the local law they are to be treated in effect as chattel mortgages (Id., 99 U. S. 251, 25 L. Ed. 339; Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285; Bryant v. Swofford Brothers, 214 U. S. 279, 290, 291, 29 Sup. Ct. 614, 53 L. Ed. 997).

McIver v. Williamson Co., 19 Okl. 454, 92 Pac. 170, 13 L. R. A. (N. S.) 696, above, was replevin by the defendant Williamson Company wholesale grocers to recover certain groceries that it had sold and delivered to one Pickford, a retail dealer in groceries, under an agreement to be paid for upon delivery, but were not paid for. After several demands upon him for payment, which he failed to make, the goods were levied upon under execution by others of his creditors and were replevined by the Williamson Company. After a full consideration of the authorities the Supreme Court of Oklahoma said:

"We take it that * * * attachment and execution creditors here are in no better position, and have no greater rights, than had the vendee (the execution debtor), because our own Supreme Court, in the case of Central Loan & Trust Co. v. Campbell Commission Co., reported in 5 Okl. 411, 49 Pac. 52 (decided in 1897), lay down this rule: 'Where personal property is sold and delivered, upon condition that the title shall not vest in the vendee, unless the price agreed upon be paid within a specified time, the vendee has no attachable interest in the property until the performance of the condition'—[citing many authorities]. * * * Under the law as laid down in this decision, and all of the decisions upon the subject that we are able to find, we think that the conclusion of the jury and the finding of the court below that the plaintiff was entitled to recover the goods was correct. * * * "

In Chandler v. Colcord, 1 Okl. 260, 32 Pac. 330, decided in 1893, the court said:

"The law is well settled that a creditor, who has no lien on the property covered by a chattel mortgage, cannot be permitted to assail the validity of the mortgage, on the ground that it was made with intent to hinder, delay and defraud the creditors of the mortgagors. In order to do so, he must not only obtain a judgment, but must have a valid execution against the property of the mortgagor [citing People's Saving Bank v. Bates, 120 U. S. 556, 7 Sup. Ct. 679, 30 L. Ed. 754]."

In Lockwood v. Frisco Lumber Co., 22 Okl. 31, 97 Pac. 562, above, decided in 1908, the syllabus reads:

"Where a chattel is sold with a reservation of title in the vendor until the price is paid, the title remains in him until the condition is performed, and a purchaser of the vendee acquires no title, though he buys in good faith for a valuable consideration and without notice of the condition."

In the course of the opinion it is stated:

"The universal and fundamental principle of our law of personal property is that no man can be divested of his property without his own consent, and, consequently, that even the honest purchaser under a defective title cannot hold against the true proprietor."

And it is now settled by the great weight of authority that, unless otherwise declared by statute, such bona fide purchaser acquires no better title than his vendor had. Lawton Pressed Brick Co. v. Ross-Kellar Co., 33 Okl. 59, 124 Pac. 43, 49 L. R. A. (N. S.) 395, decided in 1912, and Frick Co. v. Oats, 20 Okl. 473, 94 Pac. 682, decided in 1908, are to the same effect. See, also, Gentry v. Singleton, 128 Fed.

679, 63 C. C. A. 231, Court of Appeals, this Circuit, in error to the United States Court of Appeals, Indian Territory, and Holt v. Crucible Steel Co., 224 U. S. 262, 32 Sup. Ct. 414, 56 L. Ed. 756.

In Garrison v. Street & Harper Furniture Co., 21 Okl. 643, 97 Pac. 978, 129 Am. St. Rep. 799, decided in 1908, Garrison on November 20, 1904, sold to a Mrs. Wade certain hotel furniture in a hotel in Oklahoma City, delivering possession thereof to her on the same day, taking her note for the purchase price, some $4,000, secured by a chattel mortgage on the property sold her, which also covered any property that she might afterwards acquire and place in the hotel. This mortgage was not filed for record until December 31, 1904, when it was filed in the proper office. December 15, 1904, the Street & Harper Furniture Company sold to Mrs. Wade certain bedding and furniture, which she placed in the hotel, taking from her on the same day a chattel mortgage thereon to secure the purchase price, some $1,275. This mortgage was not filed for record until the afternoon of January 3, 1905, when it was filed for record in the proper office. The mortgage of Mrs. Wade to Garrison not having been paid, Mrs. Wade, about 9 o'clock in the forenoon of January 3, and four hours before the Street & Harper Company's mortgage was filed for record, voluntarily delivered to Garrison all the property covered by the mortgage to him, and authorized him to foreclose the same by a sale of the property as provided in the mortgage, which he proceeded to do. January 15, 1905, in default of payment by Mrs. Wade of the first of her notes to the Street & Harper Company, that company commenced this suit against Garrison and Mrs. Wade to recover the property mortgaged by Mrs. Wade to them. Upon the trial the court rendered judgment in favor of the Street & Harper Company, and Garrison brought error. In reversing this judgment Judge Dunn speaking for the Supreme Court of Oklahoma said:

"Upon what theory the" Street & Harper Company "was given judgment in the court below we are not advised, except as is stated in counsel's brief that the decision of the lower court was right, under the construction given to our statute in the case of Greenville National Bank v. Evans-Snyder-Buel Co., found in 9 Okl. 353, 60 Pac. 249," which doubtless was the controlling authority in the mind of the court below; but in Frick Co. v. Oats, 20 Okl. 473, 94 Pac. 682, "the portion of that opinion bearing upon the question involved in this case was specifically overruled."

Cornelius v. Boling, 18 Okl. 469, 90 Pac. 874, decided in 1907, cited in support of the opinion in Greenville National Bank v. Evans, is also disapproved in Frick Company v. Oats, as mere dictum and not binding upon the court. In the course of the opinion (in Garrison v. Street & Harper Company) it is further said in effect that at common law the mortgagee of personal property held the right of possession as well as the legal title to the property, but that rule has been changed by nearly all of the Western states, so that the legal title to the property remains in the mortgagor, and where the mortgage or statute so provides, the mortgagor may remain in possession, and if he does his mortgage as a general rule must be filed for record, or it will not be protected against creditors of the mortgagor who have acquired valid liens thereon by contract or judicial process; but if the mortgagee takes

possession of the property or files his mortgage for record before any other right to or lien upon the property attaches, the title under the mortgage is good against everybody, though not recorded, if it was previously valid between the parties. The ultimate conclusion of the court is that a chattel mortgage in Oklahoma, though not recorded or possession of the property not taken by the mortgagee when made, yet if possession is taken by him, or the mortgage is filed for record prior to the attaching of liens of other parties, the filing of the mortgage for record has the effect of taking possession, and the rights of the mortgagee will be protected from the date of the filing of the same for record. This, it will be observed, is the rule as to chattel mortgages in Oklahoma; but, as we have before, seen, contracts for the conditional sale of personal property in that state and generally, in which the legal title and right of possession are reserved in the vendor until the purchase price is paid though not recorded, stand upon a different footing and are valid as between the parties and as against creditors of the vendee who have acquired no lien thereon. In Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285, the authorities bearing upon the question of conditional sales of personal property and the effect of local laws of different states bearing upon their validity are reviewed; the court in conclusion saying:

"It is only necessary to add that there is nothing either in the statute or adjudged law of Idaho (where the contract was made) to prevent, in this case, the operation of the general rule, which we consider to be established by overwhelming authority, namely, that, in the absence of fraud, an agreement for a conditional sale (of personal property) is good and valid, as well against third persons, as against the parties to the transaction, and the further rule that a bailee of personal property cannot convey the title, or subject it to execution for his own debts, until the condition on which the agreement to sell was made has been performed."

Is this rule changed by section 6745, Revised Statutes of Oklahoma 1910, or by the Bankruptcy Act as amended June 25, 1910? Section 6745 of the Revised Laws of Oklahoma provides:

"Any instrument in writing, or promissory note, evidencing the conditional sale of personal property, which retains the title to the same in the vendor until the purchase price is paid in full, shall be void as against innocent purchasers, or the creditors of the vendee, unless the original instrument, or a true copy thereof, shall have been deposited in the office of the register of deeds in and for the county wherein the property shall be kept; and, when so deposited, it shall be subject to the laws applicable to the filing of chattel mortgages."

This section was enacted in 1897, but we discover nothing therein inconsistent with section 2894 of the Revised Laws, enacted in 1890. The contracts in question were deposited for record in the proper office December 30, 1913, and not until that time, under a literal reading of the section, were they subject to the law of Oklahoma as to the filing of chattel mortgages. But if the true interpretation of the statute be that conditional sale contracts in that state are to be treated as chattel mortgages, and void as to creditors of and innocent purchasers from the vendee unless filed for record, etc., still the legal title and right of possession to the property in controversy remained in the vendor from their date as security for a then present consideration

for the property delivered by the plow company to the vendee, and are within the protection of section 67d of the Bankruptcy Act as amended in 1910; and the failure to record the contracts does not, under the Bankruptcy Act, change the essential character of the transaction, as these contracts were not converted into a preferential transfer by the bankrupt of his property by the mere failure to file them for record. In re Jackson Brick & Tile Co. (D. C.) 189 Fed. 636, 645; Deupree v. Watson, 216 Fed. 483, 490, 132 C. C. A. 543 (Court of Appeals, 6th Circuit). As there are no subsequent purchasers of the property in controversy from the bankrupt, the controversy relates only to the rights of general creditors represented by the trustee.

[2] Section 47a (2) of the Bankruptcy Act, as amended in 1910, provides:

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon."

This section by its terms only vests in the trustee "the rights, remedies and powers of a creditor holding a lien," etc., upon property coming into the custody of the court of bankruptcy from the date of the filing of the petition in bankruptcy, if adjudication in bankruptcy follows; but this is far short of declaring that such rights, remedies, and powers are paramount or superior to all prior liens upon or rights in such property; nor does it vest in the trustee a lien upon or right in or to property not in fact belonging to the bankrupt, or in which he has no interest; and it is settled by the decisions of the Supreme Court of Oklahoma that lien creditors by attachment, judgment, or otherwise in that state, reach only the interest of the debtor in such property, subject to prior liens or incumbrances thereon. The rights so vested in the trustee, therefore, under section 47a (2), are only such as any other lienholder might acquire in or to the property of the bankrupt on the date of the filing of the petition in bankruptcy, and if he has no interest in the property, the trustee acquires none. The bankrupt, Terrell, under the contracts had the right to pay the balance of the purchase price to the plow company at any time prior to its taking possession of the property, and prior to the bankruptcy proceedings and thus acquire the full title thereto; and this right vested in the petitioner as trustee upon his appointment and qualification, who undoubtedly might enforce this right of the bankrupt; but this he does not seek to do.

In Baily v. Baker Ice Machine Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275, the Supreme Court recognizes and gives effect to the distinction between contracts for the conditional sale of personal property where the title to and right of possession are reserved in the vendor until the purchase price is paid, and sales where the absolute title is in the vendee and a mortgage is made to secure the purchase price of the property, and upholds the title of the conditional vendor as against the trustee in bankruptcy, though the conditional sale contract, was not recorded when made, but is filed for record prior to the filing of the petition in bankruptcy. It was also held that the conditional

sale contract did not amount to a preferential transfer of the ice machine to the bankrupt within the meaning of the Bankruptcy Act as amended, because there was no transfer by the bankrupts of any property belonging to them, which is essential to create a preferential transfer.

Counsel for the petitioner rely especially upon In re Johnson (D. C.) 212 Fed. 311, in which Judge Campbell of the Eastern District of Oklahoma reaches a conclusion different from that reached by him In re Wall (D. C.) 207 Fed. 994, wherein it is held that a creditor, within the meaning of the Oklahoma statute, means "a creditor who has perfected a lien by legal process upon specific property." It is said in the brief of counsel for the respondent that Judge Cotteral, of the Western District of Oklahoma, has twice held (In re McGuire and In re Bell, two unreported cases) to the same effect; and such seems to be the general rule. In re Wall and the decisions of Judge Cotteral so referred to were cases arising prior to the amendment of the Bankruptcy Act in 1910; but In re Johnson and the present case by Judge Cotteral were decided in actions arising since that amendment. It thus apparently appears that the United States District Courts for the two districts of Oklahoma have taken different views of this question.

In Re Johnson, the amendment of 1910, and Cornelius v. Boling, 18 Okl. 469, 90 Pac. 874, and some other cases are cited as the reason for departing from the ruling In re Wall; but no reference is made to Garrison v. Street & Harper Co., 21 Okl. 643, 97 Pac. 978, 129 Am. St. Rep. 799, or to Frick Co. v. Oats, 20 Okl. 473, 94 Pac. 682, wherein Cornelius v. Boling is disapproved by the Supreme Court of Oklahoma, and Greenville National Bank v. Evans et al., 9 Okl. 353, 60 Pac. 249, is directly overruled. Union National Bank v. Oium, 3 N. D. 193, 54 N. W. 1034, 44 Am. St. Rep. 533, is also cited in support of the ruling In re Johnson; but, as that is a construction of the North Dakota recording act, we need not consider it, for we examine the decisions of the Supreme Court of Oklahoma not to determine whether or not they are correctly decided, but only to ascertain what they decide is the meaning of the local statutes of that state bearing upon the questions involved, and when we have ascertained this such decisions will be given effect by us.

[3] In re Martin (Petition of George Bothe) 173 Fed. 597, 97 C. C. A. 547, and First National Bank v. Connett, 142 Fed. 33, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148, are also cited as supporting the conclusion In re Johnson; but they were decided under the recording law of Missouri. It may be said, however, that since the present case was argued and submitted the Supreme Court of the United States in Carey v. Donahue, 240 U. S. 430, 36 Sup. Ct. 386, 60 L. Ed. 726, has considered the case of Bank v. Connett and cases like it, and has apparently disapproved the construction placed by them upon the words of section 60b of the Bankruptcy Act as amended in 1903 and 1910, "if by law such recording or registering is required." As we read the opinion in Carey v. Donahue, it holds that the four months period prescribed in sections 60a and 60b of the act as amended in 1903 and 1910 for filing or recording a preferential transfer, shall not expire until four months after

the date of the recording or registering of the transfer, "if by law such recording or registering. is required," is in the interest of persons who by the applicable local law are to be protected by such registration, and do not refer to transfers which are valid between the parties and as against creditors whether recorded or not; and unless persons so interested in the registering of the transfer are those who under the local law would be protected by the record of the transfer.if one was made, the filing of the instrument for record is "not required," and becomes immaterial.

By the express terms of section 2894 of the Revised Laws of Oklahoma, and by the settled decisions of the Supreme Court of that state, creditors who under sections 4031 and 6745 may successfully challenge the validity of the conditional sale contracts because not recorded, are those only who have acquired or fastened a lien upon the property by judgment or otherwise. There are none of this class of creditors in this case; and if it be only a matter of procedure to obtain such a lien that is hardly a valid reason for disregarding the statute in the one case, and the decisions of the Supreme Court of Oklahoma construing the other two sections.

Further than this, section 60b of the Bankruptcy Act, as amended in 1910, authorizes the trustee to avoid a preferential transfer only when the person receiving the transfer or to be benefited thereby, or his agent acting therein, "shall then have reasonable cause to believe that the enforcement of such transfer would effect a preference, it shall be voidable by the trustee," etc. As before stated, there is no question of fraud involved in this controversy; nor is there any showing of a preferential transfer by the bankrupt of any of his property involved herein to the plow company or any one else. The matter was submitted to the referee and the judge upon a stipulation of facts, the pertinent parts of which after setting out the making of the conditional sale contracts, the date thereof, the time of filing the same for record, the filing of the petition in bankruptcy, the adjudication thereon, and the appointment of the petitioner as trustee, read in this way:

"That between the date of the making of the contracts and the filing thereof for record on December 30, 1913, third parties who are now creditors of the bankrupt sold certain goods to him on credit (which goods are described); that on December 20, 1913 (nearly a year and a half after the credits were extended), the bankrupt was insolvent, and the claimant plow company then had reasonable grounds to know of his insolvency."

This wholly fails to show that the plow company, though it may have known of the bankrupt's insolvency ten days before it filed the conditional sale contracts for record, had reason to believe when the contracts were filed that a preference would be effected by the filing thereof for record. For this reason alone the trustee would not be entitled to retain possession of the property involved in this controversy. Besides the lien of the trustee under section 47a (2) of the act as amended dates only from the filing of the petition in bankruptcy. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275.

In the case of Bunch v. Maloney, 233 Fed. 967, 147 C. C. A. 641, upon appeal from the District Court, Eastern District of Arkansas, wherein a mortgage given for a present consideration ten months before but was not recorded because of some defect in the filing until within the four months preceding the filing of the petition in bankruptcy, was submitted to us at the same term the case now under consideration was submitted, in which we held that Carey v. Donahue properly understood was not inconsistent with Bank v. Connett and other like cases, and we followed the rule announced in that case, though the Arkansas recording statute as construed by the Supreme Court of that state is that creditors not having a lien upon the property covered by the unrecorded mortgage are not within the protection of the statute. In that case creditors represented by the trustee in bankruptcy had not prosecuted their claims to judgment, but had procured the appointment of a receiver in the state court of the property because of the insolvency of the bankrupt; but a receiver in insolvency is not within the protection of the recording statute of Arkansas. In re Bunch Com. Co. (D. C.) 225 Fed. 243, 246. The Supreme Court of the United States has granted a writ of certiorari in that case (242 U. S. 626, 37 Sup. Ct. 13, 61 L. Ed. 535), which has not yet been determined, so far as we are advised, and its determination by that court must be awaited before it can be said definitely what its decision will be. It is safe to say, however, that Carey v. Donahue, as decided does not disapprove the decision in Bailey v. Baker Ice Machine Company, wherein it is held that a conditional sale contract of personal property, though unrecorded, is not a preferential transfer by the bankrupt vendees in violation of any provision of the Bankruptcy Act, where the transaction is entirely free from fraud.

Post v. Berry, 175 Fed. 564, 99 C. C. A. 186, is also cited, and is said to be a late decision of this court that should be followed. The case arose under the Iowa recording act, and In re Martin (George Bothe, Petitioner) 173 Fed. 597, 97 C. C. A. 547, and the Connett Case, were followed as controlling decisions. But it does not control the decision of this case, for the Iowa statute under which it arose is as follows:

Code of Iowa 1897, § 2905: "No sale, contract or lease, wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any creditor or purchaser of the vendee or lessee in actual possession obtained in pursuance thereof, without notice, unless * * * recorded."

Section 2906: "No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers, without notice, unless" recorded.

The last section would be inapplicable in any event, for the plow company here, which was the vendor, did not retain possession of the property, and it was delivered to the vendee. The Supreme Court of Iowa has repeatedly held that section 2905 of the Code does not mean general creditors, even though their indebtedness is incurred subsequent to the execution of the unrecorded mortgage and before it is recorded; and before such a creditor can successfully assert a right as

against the unrecorded instrument he must obtain a lien upon or interest in some way in the mortgaged property by judgment or otherwise. Blackman v. Baxter & Co., 125 Iowa, 118, 100 N. W. 75, 70 L. R. A. 250, 2 Ann. Cas. 707; Meyer v. Car Co., 102 U. S. 1, 10, 26 L. Ed. 59; Nauman Co. v. Bradshaw, 193 Fed. 350, 353, 113 C. C. A. 274. And see Emerson-Brantingham Co. v. Lawson (D. C.) 237 Fed. 877, and cases cited. But we need only say that the decision (Post v. Berry) is not controlling of this case.

A number of other cases are cited by the petitioner, but we need not consider them, for, under the facts stipulated, the cases to which we have referred, and the recording statute of the state of Oklahoma as construed by the decisions of the Supreme Court of that state we are satisfied that the district court correctly held that the plow company was entitled to the property in controversy.

The petition to revise is therefore denied at the cost of the petitioner; and it is accordingly so ordered.

Since the foregoing opinion was filed, the decision of the United States Supreme Court in Martin v. Commercial National Bank has been published in 245 U. S. ——, 38 Sup. Ct. 176, 62 L. Ed. ——.